**Maurice DEBLOIS, Plaintiff-Appellant,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.**

No. 82–1059.

United States Court of Appeals, First Circuit.

Argued June 9, 1982.

Decided Aug. 27, 1982.

---

David R. Patterson, Worcester, for appellant.

Donna C. McCarthy, Asst. Regional Atty., Dept. of Health and Human Services, Washington, D. C., for appellee.

Before COFFIN, Chief Judge, BOWNES, Circuit Judge, ROSENN,* Senior Circuit Judge.

ROSENN, Senior Circuit Judge.

We have before us an appeal by plaintiff from a final order of the district court affirming the administrative denial by the Secretary of Health and Human Services (Secretary) of social security disability insurance benefits under 42 U.S.C. § 423. On appeal, plaintiff raises two issues. First, he directly challenges the district court's conclusion that the Secretary's determination was supported by substantial evidence. Second, he argues that the presiding administrative law judge (ALJ) should have more fully developed the record probative of the claim of disability because the plaintiff lacked counsel and was obviously suffering mental impairment at the time of his hearing.

We agree with the district court that on the record before the ALJ the Secretary's determination is supported by substantial evidence. We are persuaded, however, that under the circumstances the ALJ should have developed the record more fully in attempting to ascertain whether plaintiff's mental disability existed on March 31, 1972,

* Of the Third Circuit, sitting by designation.

the date he last qualified for disability coverage, and whether it was then and has continued to be of such severity as to be disabling within the terms of the Social Security Act, 42 U.S.C. § 423(d). We therefore vacate the order of the district court and remand to the district court for entry of an order remanding to the Secretary.

### I.

Plaintiff sustained serious wounds when he was accidentally shot while serving in Vietnam in 1969. The impact of the bullet caused extensive damage to his leg, which almost required amputation. The Veterans' Administration (VA) initially awarded him a pension based on an 80% disability rating, and subsequently increased the rating to 100%. In evaluating the plaintiff's disability, the VA assigned a value of 10% to what it termed a "nervous condition" caused by the episode. Plaintiff claims that he filed for social security disability benefits at this time, but his claim is not supported by the record.

Upon completing a period of convalescence, including a six-month hospital stay, claimant in 1971 enrolled in an architectural program at Rensselaer Polytechnic Institute. He completed three consecutive semesters, maintaining a cumulative grade point average between 2.0 and 2.5. Over the next seven years plaintiff attended the school only sporadically, however, completing only an additional one and one-half years worth of schooling. During this same period, he appears to have had only one job for a very brief time. The parties agreed that under the applicable provisions of the Social Security Act plaintiff last met the earnings requirement qualifying him for disability benefits on March 31, 1972.

Sometime in the mid-to-late 1970's, plaintiff was convicted of a criminal offense and sentenced to two years' imprisonment. The conviction was overturned on appeal. In connection with the conviction, however, plaintiff in 1977 was referred for psychiatric treatment because of his sociopathic behavior. He was also examined in 1977 under the auspices of the VA by the Lahey Clinic at Boston. That examination revealed that although plaintiff's gunshot injury had healed substantially, he possessed symptoms of mental disorder. Plaintiff has since been diagnosed as a schizophrenic, undifferentiated type.

On August 1, 1978, plaintiff filed for disability benefits with the Social Security Administration (SSA), stating that he had been unable to work since August 12, 1969, because of his gunshot wound. The SSA ruled that he did not qualify for disability benefits, a determination that was affirmed on reconsideration. Plaintiff thereafter requested and received a hearing before an ALJ on May 3, 1979, at which he was not represented by counsel. Although the ALJ found that plaintiff had sustained a serious gunshot wound in 1969, he determined that plaintiff's injuries had healed well and that he physically appeared capable of working. The ALJ attributed claimant's inability to work successfully to severe psychiatric illness, which he found of disabling severity.

> Symptoms of mental disorder are noted in the Lahey Clinic report as well as in reports from the claimant's treating psychiatrist, George Irving Gahm. The existence of such an illness is confirmed in extensive post hearing psychological and psychiatric examinations conducted by Drs. Irwin Klepper and Sand[f]ord Bloomberg, respectively. In sum these reports indicate that if he had current insured status, he would be eligible for payment of benefits.

The ALJ concluded, however, that plaintiff was not entitled to benefits because he had failed to establish that he had been continuously disabled since March 31, 1972, the last day he qualified for coverage.[1]

---

1. The ALJ specifically found as fact No. 5:
 The claimant is currently suffering from severe psychiatric illness with onset of treatment in October 1977. There is no medical evidence relating to psychiatric illness prior to that date. The claimant has no severe residuals from his 1969 leg gunshot wound which would prevent the performance of substantial gainful activity . . . .

The Appeals Council denied plaintiff's request for review, thus rendering the decision of the ALJ a final decision of the Secretary. Plaintiff then commenced an action in the United States District Court for the District of Massachusetts seeking judicial review of the adverse determination under 42 U.S.C. § 405(g). The matter was referred to a magistrate for proposed findings of fact pursuant to 28 U.S.C. § 636(b).

The magistrate found that there was substantial evidence to support the decision of the Secretary and recommended that plaintiff's motion for an order reversing the decision be denied. Subsequently, the district court entered judgment for the defendant. The court concluded, first, that the decision of the Secretary to deny benefits was supported by substantial evidence, and second, that the Secretary did not breach a duty to aid claimant in meeting his burden of proof.

## II.

On appeal, the plaintiff does not press a disability claim because of the leg injury. Rather, plaintiff advances two arguments predicated on his mental condition. Plaintiff contends that there is medical and nonmedical evidence in the record establishing that he has been disabled by his psychological impairment since the period of his insured status. In addition, plaintiff maintains that the ALJ should have more fully developed the evidence probative of plaintiff's entitlement to disability.

To be considered disabled, plaintiff must have "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically accepted clinical and laboratory techniques." 42 U.S.C. § 423(d)(3). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Moreover, because plaintiff last qualified for disability coverage on

March 31, 1972, he had the burden of establishing by credible evidence that his mental impairment was of a disabling level of severity as of that date. *Ragan v. Finch*, 435 F.2d 239, 241 (6th Cir. 1970), *cert. denied*, 402 U.S. 986, 91 S.Ct. 1685, 29 L.Ed.2d 152 (1971). It is not sufficient for him to establish that his mental impairment had its roots prior to that date. *See Sampson v. Califano*, 551 F.2d 881, 882 (1st Cir.), *cert. denied*, 434 U.S. 854, 98 S.Ct. 171, 54 L.Ed.2d 124 (1977).

The extent of our appellate review of the Secretary's determination is, like that of the district court, circumscribed. We are not called upon to examine the evidence as initial factfinder. Rather, our review is limited to a determination of whether the findings of the Secretary were supported by substantial evidence. 42 U.S.C. § 405(g); *Miranda v. Secretary of HEW*, 514 F.2d 996, 998 (1st Cir. 1975); *Reyes Robles v. Finch*, 409 F.2d 84, 86 (1st Cir. 1969).

Our review of the record convinces us that, based on the evidence before him, the ALJ's finding that the plaintiff's psychological disability has not existed continuously since March of 1972 is supported by substantial evidence. The record contains no medical evidence of significant psychological disorder of disabling severity between 1969 and 1977. And the nonmedical evidence of plaintiff's mental condition is not so probative of a disabling psychiatric illness that we can say that the ALJ's finding is not supported by substantial evidence.

Plaintiff's contention that the record clearly supports a finding of continuous disabling psychological impairment is based on favorable inferences he draws from his mental history of 1977–79, from the asserted "claim of a nervous condition" that he filed on September 11, 1970, with the VA, and from the subsequent award of 10% increased disability compensation for this condition. In his zeal to find support for his position, however, plaintiff's counsel has not correctly represented the content of the record. Counsel represents in his brief that

the VA's diagnosis of plaintiff in connection with its finding of a 10% disability for a nervous condition was: "'Personality Disorder, Obsessive Compulsive, with Sociopathic aspects and paranoid ideation.' (Tr. 122)" The diagnosis referred to was not, however, made by the VA during the insured period as represented by counsel; the VA, in fact, never made the diagnosis. The statement relied on is contained in a letter of Dr. George Gahm, plaintiff's treating psychiatrist, is dated January 10, 1978, and refers to treatment since October 25, 1977.

Counsel also argues that the post-hearing medical report and evaluation dated July 5, 1979, of Dr. Bloomberg, another psychiatrist, reveals symptoms of paranoid schizophrenia existing prior to March 31, 1972. None of the reports, however, does more than evaluate the claimant's current mental status, although they do refer to an obsessive concern with the events leading to his leg injury.

In sum, having carefully reviewed the record we are satisfied that the district court committed no error in holding that the Secretary's decision to deny benefits was predicated upon substantial evidence. This does not dispose of the case, however, because we are troubled by an important aspect of the hearing before the ALJ to which we now turn.

### III.

When the ALJ opened the hearing, he noted that plaintiff appeared without counsel. The ALJ informed him that he, the ALJ, assumed that by his appearance without counsel, plaintiff was "waiving [his] right to an attorney." Plaintiff responded in the affirmative. The ALJ also called to plaintiff's attention that he had last met the insured status requirements on March 31, 1972, and he would therefore have to show a disability which began prior to 1972 and has continued without interruption.

Plaintiff produced and offered in evidence the psychological reports of Dr. Gahm which disclose his current mental problems. He also testified to the psychiatric treatment he was currently receiving. The post-hearing reports of Dr. Bloomberg and Dr. Klepper received on the initiative of the ALJ disclose chronic and severe mental disorders.[2] Although Dr. Klepper's report does not provide evidence of continuous mental illness of disabling severity since plaintiff's war injury, it does acknowledge the possibility that the injury may be the genesis of his present mental disorder. This report and Dr. Bloomberg's report are suggestive of a need for further inquiry to ascertain the antecedence, severity, and duration of the mental illness.

■ Social security proceedings "are not strictly adversarial," *Miranda v. Secretary of HEW*, 514 F.2d 996, 998 (1st Cir. 1975). Writing for this court, Judge Campbell has elsewhere recognized that in certain circumstances the Secretary may have a duty to develop evidence for a claimant not represented by counsel.

In most instances, where appellant himself fails to establish a sufficient claim of disability, the Secretary need proceed no further. Due to the non-adversarial nature of disability determination proceedings, however, the Secretary has recognized that she has certain responsibilities with regard to the development of the evidence, and we believe this responsibility increases in cases where the appellant is unrepresented, where the claim itself seems on its face to be substantial, where there are gaps in the evidence necessary to a reasoned evaluation of the claim, and where it is within the power of the administrative law judge, without undue effort to see that the gaps are somewhat filled—as by ordering easily obtained further or more complete reports or requesting further assistance from a social worker or psychiatrist or key witness.

---

2. Dr. Klepper concludes in his report of August 24, 1979, to the Disability Determination Service of the Massachusetts Rehabilitation Commission that

 Maurice DeBlois appears to have a chronic and serious thought disorder. He has faulty

reasoning, borderline judgment, cognitive focusing, and inappropriate emotional responses at times. Although he is of high [a]verage intelligence, and good memory, he cannot perform sustained intellectual activities without the penetration of his thought disorder.

*Currier v. Secretary of HEW*, 612 F.2d 594, 598 (1st Cir. 1980) (citations omitted). As the court noted, the Secretary's responsibility to develop evidence is even greater when the claimant is obviously mentally impaired. *Id.*

 Because of plaintiff's readily apparent serious mental disorder and the ALJ's notice of the possibility that the disorder might be war-related, we believe that the Secretary, through his representative, the ALJ, had a duty which has not been adequately discharged to develop the record of the etiology of the illness, its course, and its severity. The record does not reveal whether the ALJ, in referring plaintiff for psychological examinations after the hearing, ever sought an opinion as to whether plaintiff's disability had commenced prior to March 31, 1972.[3] The ALJ should therefore have asked the experts who had examined plaintiff whether they were able to express an opinion as to whether plaintiff suffered from mental illness of disabling severity while on insured status in 1972 and whether mental illness of that severity has existed continuously to the present.

Posing such a question places no undue hardship on the administrative proceeding, and its answer may establish the validity of plaintiff's claim. The record is not so persuasive as to rule out any connection between DeBlois' mental state at hearing and his wartime injury. It may well be that the psychiatrists and psychologists now examining the plaintiff will not be able to express an opinion as to his mental condition since he last qualified for disability coverage. Then again, it may be that they can.

 Fairness dictates that when a claimant obviously suffering from a severe mental disorder appears at a social security proceeding without counsel, the ALJ undertake to protect his interests at the hearing. We therefore conclude that good cause has been shown for remand to the Secretary for the limited purpose of ascertaining whether the experts who have examined plaintiff are able to testify that his illness has been of disabling severity since he last qualified for coverage in March 1972.[4] *See Figueroa v. Secretary of HEW*, 585 F.2d 551, 554 (1st Cir. 1978).

*The judgment of the district court is vacated and the case is remanded to the district court with directions to enter an order remanding to the Secretary for further proceedings consistent with this opinion.*

---

3. Plaintiff contends that he endeavored to submit reports of the VA from 1969–71 which were material. These have been attached to defendant's brief but add nothing helpful to plaintiff's claim. He also indicated at the hearing that he had hoped to call as witnesses some old girlfriends who would have offered nonmedical evidence concerning his illness between 1972–77.

4. 42 U.S.C. § 405(g) provides in part that the court "may, at any time, on good cause shown, order additional evidence to be taken before the Secretary, and the Secretary shall, after the case is remanded, and after hearing such additional evidence ... modify or affirm his finding of fact or its decision, or both ...."