February 2, 1993 [NOT FOR PUBLICATION]

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1701

RICARDO PADILLA PEREZ,

Plaintiff, Appellant,

v.

SECRETARY OF HEALTH & HUMAN SERVICES,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Perez-Gimenez, U.S. District Judge]

Before

Breyer, Chief Judge,

Torruella and Selya, Circuit Judges.

Raymond Rivera Esteves and Juan A. Hernandez Rivera on brief

for appellant.
Daniel F. Lopez Romo, United States Attorney, Jose Vazquez

Garcia, Assistant United States Attorney, and Amy S. Knopf,

Assistant Regional Counsel, Department of Health and Human
Services, on brief for appellee.

Per Curiam. Claimant Ricardo Padilla Perez appeals

a district court judgment affirming a decision of the

Secretary of Health and Human Services denying his third

claim for Social Security disability benefits. We affirm.

I.

Claimant was born in Puerto Rico on February 7, 1940.

He completed the first grade and is illiterate. As an adult,

claimant resided and worked in the mainland United States and

Puerto Rico. He speaks some English. Claimant worked as a

bookbinder in the New York City area, a job that largely

required that he stand and pack cartons with books and

occasionally use a power press. In Puerto Rico, claimant

worked as a road laborer for the Department of Natural

Resources performing maintenance and cleaning work.

Claimant filed three applications for disability

benefits based on an alleged mental impairment. The first

was filed in Puerto Rico on September 2, 1982 and alleged

that claimant had been unable to work since September 11,

1981 due to a nervous condition. The Social Security

Administration (SSA) denied that claim after initial review

and reconsideration. The decision on reconsideration took

place in May 1983 and claimant did not seek further review.

Two years later, he filed his second application in New York,

again alleging September 11, 1981 as his date of onset.1

1. This second application was filed during the grace period
created by the 1984 Social Security Disability Reform Act,
Pub. L. 98-460, and entitled claimant to a redetermination of

That claim also was denied upon initial review and

reconsideration. This time, claimant sought review by an

administrative law judge (ALJ). After a full hearing at

which claimant and medical advisor Rafael Nogueras (a

psychiatrist) testified, the ALJ ruled that claimant was not

disabled on March 27, 1986. The Appeals Council declined

further review, thus rendering the ALJ's decision final.

Claimant did not seek judicial review. He immediately filed

his third application, which is the subject of this appeal.2

In contrast to his first two applications, claimant

amended his third application to allege February 25, 1978 as

his date of onset. (Tr. 272).3 The SSA determined that some

of the earnings that had been attributed to claimant when his

previous applications were processed were not, in fact,

claimant's earnings. (Tr. 292, 296). Consequently, the SSA

redetermined claimant's insured status and found that it

the whole period presented by his earlier claim. (Tr. 497).

2. Although claimant's third application alleged a back
impairment, he indicated that his primary ailment was mental.
The sole issue presented in this appeal is whether claimant
was disabled by his mental impairment.

3. Claimant filed a statement in connection with his third
application wherein he alleged that he lost his Social
Security card in New York and that the earnings that appeared
in his record after 1978 did not belong to him. (Tr. 294).

-3-

expired on June 30, 1983. (Tr. 298).4 The SSA denied

claimant's third application on the ground of res judicata on

initial review, reconsideration, and following a limited

hearing by an ALJ.5 The Appeals Council vacated this

decision, finding that the ALJ's March 1986 decision did not

address certain consultative evaluations from the pre-June

1983 period. The Appeals Council directed the ALJ's

attention to these reports and instructed him to issue a new

decision after considering "all pertinent evidence of

record." (Tr. 504). A supplemental hearing was held.

Once again, claimant and Dr. Nogueras testified. Although

claimant maintained that he had not worked since 1978, the

ALJ found that he had earnings in 1980 and 1981 and that the

question was whether claimant was disabled between September

11, 1981 (his previously alleged date of onset) and June 30,

1983 (when his insured status expired). The ALJ found that

during this period, claimant suffered from an anxiety related

disorder and from alcohol abuse in remission. This finding

was based largely on the testimony of Dr. Nogueras. (Tr. 27,

29). This condition resulted in only moderate restrictions

on claimant's activities of daily living and social

4. The SSA's prior denial assumed that claimant was insured
through September 30, 1987. (Tr. 250).

5. We note that the ALJ who adjudicated claimant's third
application was not the same ALJ who denied his second
application.

-4-

functioning during the relevant period, and seldom resulted

in deficiencies of persistence, concentration or pace. The

ALJ further found that claimant never suffered from episodes

of deterioration or decompensation in work or work-like

settings. (Tr. 20). Where the evidence in the record

indicated that claimant's past jobs were unskilled, simple to

perform, and required no complex mental functions, the ALJ

concluded that claimant's anxiety disorder did not preclude

him from performing his past work before June 30, 1983. The

Appeals Council declined claimant's request for review, thus

rendering this second ALJ's decision final. (Tr. 5-6).

Claimant sought judicial review under 42 U.S.C. 405(g). The

district court adopted the report of a magistrate judge and

found that claimant had failed to prove that he was disabled

before June 30, 1983. This appeal followed.

II.

In evaluating any disability claim based on an alleged

mental impairment, the SSA must follow the sequential

evaluation process outlined in 20 C.F.R. 404.1520 and

404.1520a. See Goodermote v. Secretary of Health and Human

Services, 690 F. 2d 5, 6-7 (1st Cir. 1982). Bearing in mind

that Social Security proceedings are not, strictly speaking,

adversarial, Deblois v. Secretary of Health and Human

Services, 686 F.2d 76, 80 (1st Cir. 1982), it remains the

claimant's burden to prove that his mental impairment

-5-

disabled him from performing his past relevant work before

his insured status expired. See, e.g., Santiago v. Secretary

of Health and Human Services, 944 F.2d 1, 5 (1st Cir. 1991);

Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985); Deblois,

686 F.2d at 77. Our review is limited to determining whether

the findings of the Secretary are supported by substantial

evidence on the record as a whole. Ortiz v. Secretary of

Health and Human Services, 955 F.2d 765, 769 (1st Cir.

1991)(per curiam).

As it is undisputed that claimant's insured status

expired on June 30, 1983, the issue here is whether

substantial evidence supports the Secretary's nondisabled

finding for the period before this date. It is not enough for

the claimant to establish that an impairment which disabled

him from working after his insured status expired had its

roots before then. Deblois, 686 F.2d at 79. While there is

evidence indicating that claimant's condition may have

reached disabling severity after 1986, on balance, we are

compelled to agree that claimant has not shown that he was

disabled before June 30, 1983. We review the record.

III.

The earliest medical records indicate that claimant

reported experiencing nervous problems and daily alcohol

consumption in 1976 while securing treatment for trauma to

his left knee. He did not seek treatment for his nerves

-6-

then. (Tr. 358-59). He sought outpatient treatment at the

Clinica Externas de Adultos on August 20, 1979. He was then

thirty-nine years old. He reported that he had quit his job

with the Department of Natural Resources because his "nerves

betray[ed]" him and he claimed to have been unemployed for

over a year. (Tr. 171). Mental examination found claimant

tense and anxious but approachable, in contact with reality,

and with "very acceptable" judgment. (Tr. 167). An anxiety

reaction was diagnosed and claimant was placed on Vistaril (a

tranquilizer). (Tr. 167). No further treatment is reported

for approximately two years.6 Claimant consulted Dr.

Ferdinand Berrios in August 1981 complaining of chest pain

and shortness of breath associated with states of marked

anxiety. (Tr. 417-27). Dr. Berrios diagnosed a severe

anxiety neurosis with depressive traits. He prescribed

antianxiety medications (Adapin and Vistaril) and Mellaril

(an antipsychotic) and recommended that claimant obtain

psychiatric treatment. Claimant sought such treatment at the

outpatient clinic of the Bayamon Regional Hospital, again

complaining of problems with his nerves. At this time it

6. As noted above, the SSA's earnings records indicate that
claimant worked during this two year period. (Tr. 296).
Apart from his own statements, claimant submitted no evidence
to rebut the SSA's earnings record. We think it a relatively
simple matter for claimant's counsel to secure verification
of claimant's alleged dates of employment and departure
therefrom. Absent such evidence, we have no cause to second-
guess the SSA's findings.

-7-

was reported that claimant made excessive use of alcohol. In

September 1981 claimant was diagnosed to be suffering from an

anxiety reaction with dissociative features of hysterical

origin. Mellaril and Adapin were continued and counselling

was prescribed. (Tr. 170). In follow-up visits over the

next seven months claimant reported that the medications were

not helping and that he experienced hallucinations. Yet in

May 1982 he was relevant, coherent and oriented in all

spheres. (Tr. 175). Mellaril was discontinued and Vistaril

restarted. (Tr. 176).

A consulting psychiatrist, Dr. Miguel Bravo, evaluated

claimant for the SSA on October 15, 1982. (Tr. 411-13). Dr.

Bravo interviewed claimant with one of his cousins, who

reported that claimant heard voices and knocking sounds and

disappeared from home for days at a time during which he

wandered the neighborhood and became disoriented. Claimant

reported that he spent his days walking around the

neighborhood, occasionally helping with the housework,

watching T.V. or listening to the radio. He related well to

family and neighbors who visited him. Personal hygiene was

adequate. Dr. Bravo reported that claimant appeared

anguished during his mental examination and that he cried,

with thought content centered around his difficulty keeping a

job. He expressed himself with difficulty, exhibiting

thought blocking, flight of ideas and occasional incoherence.

-8-

His intellect appeared below average and he was easily

distracted. He was disoriented in time and place while

oriented in person. Memory was deteriorated for all events

and his affect was depressed. Judgment and insight were

null. Dr. Bravo diagnosed a chronic undifferentiated

schizophrenia and found that claimant was not able to handle

funds.7 Shortly after Dr. Bravo's evaluation claimant's

internist (Dr. Berrios) opined that claimant was disabled.

(Tr. 418, 439).

Claimant was evaluated for the SSA again in March 1983

by another psychiatrist, Dr. Mojica Sandoz.8 Mental

examination found claimant unshaven though clean, exhibiting

slight psychomotor retardation. He was slightly anxious and

tense, but accessible, cooperative and frank. He did not

show a significant impairment in his capacity for

7. Another consultant, Dr. Ramon Freese Suarez, (an
internist and cardiologist), evaluated claimant in November
1982. He found a neuropsychiatric condition, severe lower
leg varicosities and gastritis. (Tr. 429). Dr. Freese's
report indicates that claimant reported that he had worked in
several factories in New York but was thrown out of jobs due
to his nervous condition. (Tr. 426). In contrast to other
medical records, Dr. Freese's report indicates that claimant
was last employed in 1981 by the city of Corazol. (Tr. 426).

8. Claimant told Dr. Mojica that he had not worked since
1977 or 1978, his last job being with the Puerto Rico
Department of Natural Resources. He also reported that he
wounded himself with a machete while he was so employed, and
that he had to quit because his superior did not want him
working anymore. He claimed to have been fired from another
job as a janitor. (Tr. 444-45).

-9-

establishing interpersonal relations. (Tr. 445). Though not

spontaneous, claimant was logical, coherent and relevant. He

exhibited no suicidal or homicidal tendencies nor evidence of

hallucinations. He also did not show personality

deterioration. There was no evidence of blocking,

disorganization, nor difficulty in the formulation and

elaboration of ideas. Remote memory was spotty, but recent

and intermediate memory were adequate. Noting that

claimant's intellectual functioning appeared to be below

average, Dr. Mojica diagnosed an unspecified mental

retardation and dependent personality disorder. He found

claimant able to handle funds. (Tr. 445-46).

Claimant returned to the outpatient clinic in Puerto

Rico again on May 5, 1983, at which time he reported that the

medications were helping him and that he was more calm. (Tr.

177). No medical treatment is reported for more than a year

after claimant's insured status expired. Claimant returned

to the outpatient clinic on October 15, 1984, claiming he had

been absent during the interim because he was caring for his

sick mother. He appeared clean, anxious and oriented in all

spheres. (Tr. 179). His memory and intellect were adequate,

although judgment and insight were poor. A mild to moderate

anxiety disorder was diagnosed and Vistaril was again

prescribed. (Tr. 179-80). An individualized treatment plan

dated November 28, 1984 described claimant's anxiety disorder

-10-

as chronic and mild, while indicating that claimant had

exhibited good adaptation over the last year. (Tr. 181-184).

A February 15, 1985 treatment summary from the Mental Health

Center indicated that claimant then had a mild to moderate

anxiety disorder and was partially limited in his ability to

do his usual work. (Tr. 190-91).

The medical evidence following claimant's return to New

York in March 1985 suggests that his condition periodically

became more dire. After filing his second application for

disability benefits, claimant allegedly began suffering from

hallucinations and tried to kill himself. He was

hospitalized at the South Beach Psychiatric Center between

May 17-25 and diagnosed with an atypical psychosis. A long

history of alcohol abuse was identified, including blackouts,

delirium tremens and one prior suicide attempt.9 Claimant

was treated with Haldol (an antipsychotic) and psychotherapy

and referred to Alcoholics Anonymous. (Tr. 199-206).

Shortly after his discharge from the South Beach Psychiatric

Center claimant was evaluated for the SSA by Dr. J. Fiks.

Claimant appeared manipulative, demanding, and vague,

exhibiting a tendency to overreact and exaggerate. He was

able to provide information to suit his needs but otherwise

noncommittal. His reliability was poor. Dr. Fiks diagnosed

9. Claimant reported that he had stopped drinking one month
before his admission. (Tr. 199).

-11-

a passive-aggressive personality disorder and questioned

claimant's ability to handle funds. (Tr. 207-08).

Claimant secured further treatment from the New York

Office of Mental Health.10 He appeared to improve in the

fall of 1985 and remained asymptomatic despite decreased

medications. At that time, claimant again was caring for his

mother, who had had surgery. Another psychiatric evaluation

from November 1985 indicated that claimant could not tolerate

the pressure of a competitive work setting due to the

likleihood of decompensating under stress. (Tr. 212).

The SSA obtained two assessments of claimant's mental

residual functional capacity (RFC) from two nonexamining

consultants. On July 17, 1985, Dr. Alan Kaye reported that

claimant was limited only in his capacity to understand,

remember and carry out technical job instructions. He opined

that claimant was capable of work. (Tr. 143, 146). On

December 16, 1985, Dr. A. Stockton reported that claimant was

moderately limited in his abilities to understand, remember

and carry out detailed instructions, interact with the

general public, accept instructions and criticism, and to

respond to changes in the work setting and set realistic

goals. (Tr. 148-50). No other significant limitations were

noted.

10. Claimant also had surgery for varicose veins in his legs
in June 1985. (Tr. 233).

-12-
12

Claimant returned to Puerto Rico in January 1986, where

his second application was denied. On August 2, 1986,

claimant was evaluated by Dr. Cordero Alonso, a psychiatrist,

in connection with his third application (Tr. 458-63). Dr.

Cordero diagnosed a schizophrenic syndrome with histrionic

features. He found claimant unable to handle funds. Another

psychiatrist, Dr. Lopez Flores, evaluated claimant on March

7, 1987. He diagnosed a moderate severe dysthymic disorder

with agitation and psychotic traits. (Tr. 467-68).11 Two

nonexamining consultants made RFC assessments. On May 15,

1987, psychologist Orlando Reboredo found that claimant

suffered from recurrent major depression with anxiety and

psychotic episodes. He found claimant was not capable of

work and that his condition met listing 12.04. (Tr. 335-

43).12 However, Dr. Reboredo was not asked to focus on the

11. In this interview, claimant reported that he had not
worked since 1977 and that he had always had mental problems
but that these were exacerbated after a sister died in 1985.
Claimant was then being treated with Halcion (a sleeping
pill) and Mellaril. Claimant denied using alcohol and
reported that his mother was insane. Mental examination
found claimant to be logical, coherent and relevant,
perception unstable, affect sad, and his mood was anxious and
depressed. His concentration and attention span were below
par. He was oriented only in person, and exhibited
significant memory defects. Judgment lacked insight. (Tr.
468).

12. Dr. Reboredo indicated that claimant suffered from
marked restrictions of his activities of daily living and
difficulties maintaining social functioning, with frequent
deficiencies of concentration, persistence and pace, and one
or two episodes of deterioration or decompensation in work or
work-like settings.

-13-
13

period between 1978 and 1983. Another psychologist, Dr.

Pedro Ivan Garcia, reviewed the evidence with a specific eye

to evaluating claimant's condition before his insured status

expired on June 30, 1983. He indicated that that evidence

pointed to a nonsevere anxiety disorder that did not meet or

equal a listing. (Tr. 344, 346).13

IV.

On appeal, claimant argues that the SSA's decision is

not supported by substantial evidence on the record as a

whole because the Secretary relied on isolated statements

supporting a non-disabled finding while ignoring what

claimant says is "overwhelming evidence" to the contrary.

The argument overlooks the fact that most of the evidence

that might support a disabled finding was from the period

after claimant's insured status expired. Medical evidence

generated after a claimant's insured status expires may be

considered for what light (if any) it sheds on the question

whether claimant's impairment reached disabling severity

before his insured status expired. See, e.g., Deblois, 686

F.2d at 81 (holding ALJ should have asked consulting experts

whether pro se claimant's mental impairment reached disabling

13. Dr. Ivan Garcia noted only slight restriction of
claimant's activities of daily living and difficulties
maintaining social functioning. He reported that claimant
seldom experienced deficiencies of persistence, concentration
or pace, and that he never suffered from episodes of
deterioration in work or work-like settings. (Tr. 352).

-14-
14

severity before his insured status expired); Alcaide v.

Secretary of Health and Human Services, 601 F. Supp. 669,

672-73 (D.P.R. 1985)(applying Deblois where claimant had

counsel). See also Basinger v. Heckler, 725 F.2d 1166, 1169

(8th Cir. 1984)(collecting cases). Here, the ALJ did not

specifically mention evidence from the post-1984 period,

finding that "no consideration must be given to the

impairment as it existed at a time too far removed from the

date when claimant's insured status expired." (Tr. 20). We

cannot fault the ALJ for this ruling. The Appeals Council's

remand order specifically directed the ALJ to consider the

1983 reports of Drs. Mojica and Freese in issuing a new

decision. With the exception of Dr. Garcia's PRTF - which

found that claimant's anxiety disorder was not even severe

during the insured period - the evidence generated after

claimant's insured status expired did not address claimant's

condition before June 1983. Rather, the medical evidence and

SSA evaluations addressed claimant's condition as of the time

he was examined. Thus, the ALJ did not err in declining to

review evidence too remote in time from the insured period to

be probative of claimant's condition before June 1983. Cf.

Tremblay v. Secretary of Health and Human Services, 676 F.2d

11, 13 (1st Cir. 1982)(ALJ had no obligation to refer medical

records from period after claimant's insured status expired

to medical advisor).

-15-
15

Substantial evidence supports the ALJ's conclusion that

claimant was not disabled from his past work before his

insured status expired. The medical evidence through 1984

disclosed a mild to moderate anxiety disorder that was

managed by medications.14 There is a significant gap in

treatment between 1979 and 1981, during which time claimant

worked. After filing for benefits and securing further

treatment in 1982, claimant again stopped treatment between

May 1983 and October 1984 to care for his sick mother. Such

activity tends to support the conclusion that claimant

retained the capacity to work. Dr. Nogueras had previously

testified that claimant remained capable of performing simple

repetitive tasks even when the more dire evidence from 1985

onward was taken into account. (Tr. 67-68). The ALJ could

reasonably conclude that claimant retained this capacity

before June 1983.

Claimant argues that a vocational expert was required to

explain how his severe mental impairment affected his ability

to sustain gainful employment. While this might be true had

14. The ALJ relied on Dr. Nogueras' testimony in rejecting
Dr. Bravo's schizophrenia diagnosis. Dr. Nogueras discounted
schizophrenia because the mental health clinic then treating
claimant did not make this diagnosis and because the medical
records did not reveal persistent psychotic symptoms. (Tr.
62, 104). Dr. Nogueras opined that claimant's alleged
hallucinations were more likely due to alcohol withdrawal.
Such conflicts in the evidence are for the Secretary to
resolve. Lizotte v. Secretary of Health and Human Services,

654 F.2d 127, 128 (1st Cir. 1981)(citation omitted).

-16-
16

the ALJ determined that claimant could no longer perform his

past work, see, e.g., Ortiz v. Secretary of Health and Human

Services, 890 F.2d 520, 524 (1st Cir. 1989)(noting that

vocational expert typically required where nonexertional

impairment significantly limits claimant's ability to perform

jobs he is otherwise exertionally capable of performing),

that is not the case here. The record supports the ALJ's

view that claimant retained the capacity to perform his past

unskilled work before June 1983. Further evidence was not

necessary.

Finally, claimant says that the fact that he was fired

from his past jobs undermines the ALJ's conclusion that

claimant remained capable of performing his past work and the

ALJ's subsidiary finding that claimant never suffered

episodes of deterioration or decompensation in work or work-

like settings. The sole evidence that claimant was fired

came from the claimant himself, as he reported this to

various medical providers and SSA representatives. However,

claimant proved to be an unreliable and inconsistent source

of information. He identified various dates of employment

for his past work, and alternately reported that he had been

fired or quit his job with the Department of Natural

Resources. Claimant's contention that he was fired by the

Department of Natural Resources in 1978 is contradicted by

the SSA's earnings record, which indicated that he worked

-17-
17

until September 11, 1981. (Tr. 298). The ALJ did not find

claimant wholly credible. Absent evidence corroborating

claimant's assertions from the relevant time, we think the

ALJ's finding may stand.

Judgment affirmed.

-18-
18