USCA1 Opinion

 

 February 2, 1993 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ___________________ No. 92-1701 RICARDO PADILLA PEREZ, Plaintiff, Appellant, v. SECRETARY OF HEALTH & HUMAN SERVICES, Defendant, Appellee. __________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Juan M. Perez-Gimenez, U.S. District Judge] ___________________ ___________________ Before Breyer, Chief Judge, ___________ Torruella and Selya, Circuit Judges. ______________ ___________________ Raymond Rivera Esteves and Juan A. Hernandez Rivera on brief ______________________ ________________________ for appellant. Daniel F. Lopez Romo, United States Attorney, Jose Vazquez _____________________ ____________ Garcia, Assistant United States Attorney, and Amy S. Knopf, ______ _____________ Assistant Regional Counsel, Department of Health and Human Services, on brief for appellee. __________________ __________________ Per Curiam. Claimant Ricardo Padilla Perez appeals __________ a district court judgment affirming a decision of the Secretary of Health and Human Services denying his third claim for Social Security disability benefits. We affirm. I. Claimant was born in Puerto Rico on February 7, 1940. He completed the first grade and is illiterate. As an adult, claimant resided and worked in the mainland United States and Puerto Rico. He speaks some English. Claimant worked as a bookbinder in the New York City area, a job that largely required that he stand and pack cartons with books and occasionally use a power press. In Puerto Rico, claimant worked as a road laborer for the Department of Natural Resources performing maintenance and cleaning work. Claimant filed three applications for disability benefits based on an alleged mental impairment. The first was filed in Puerto Rico on September 2, 1982 and alleged that claimant had been unable to work since September 11, 1981 due to a nervous condition. The Social Security Administration (SSA) denied that claim after initial review and reconsideration. The decision on reconsideration took place in May 1983 and claimant did not seek further review. Two years later, he filed his second application in New York, again alleging September 11, 1981 as his date of onset.1 ____________________ 1. This second application was filed during the grace period created by the 1984 Social Security Disability Reform Act, Pub. L. 98-460, and entitled claimant to a redetermination of That claim also was denied upon initial review and reconsideration. This time, claimant sought review by an administrative law judge (ALJ). After a full hearing at which claimant and medical advisor Rafael Nogueras (a psychiatrist) testified, the ALJ ruled that claimant was not disabled on March 27, 1986. The Appeals Council declined further review, thus rendering the ALJ's decision final. Claimant did not seek judicial review. He immediately filed his third application, which is the subject of this appeal.2 In contrast to his first two applications, claimant amended his third application to allege February 25, 1978 as his date of onset. (Tr. 272).3 The SSA determined that some of the earnings that had been attributed to claimant when his previous applications were processed were not, in fact, claimant's earnings. (Tr. 292, 296). Consequently, the SSA redetermined claimant's insured status and found that it ____________________ the whole period presented by his earlier claim. (Tr. 497). 2. Although claimant's third application alleged a back impairment, he indicated that his primary ailment was mental. The sole issue presented in this appeal is whether claimant was disabled by his mental impairment. 3. Claimant filed a statement in connection with his third application wherein he alleged that he lost his Social Security card in New York and that the earnings that appeared in his record after 1978 did not belong to him. (Tr. 294). -3- expired on June 30, 1983. (Tr. 298).4 The SSA denied claimant's third application on the ground of res judicata on ___ ________ initial review, reconsideration, and following a limited hearing by an ALJ.5 The Appeals Council vacated this decision, finding that the ALJ's March 1986 decision did not address certain consultative evaluations from the pre-June 1983 period. The Appeals Council directed the ALJ's attention to these reports and instructed him to issue a new decision after considering "all pertinent evidence of record." (Tr. 504). A supplemental hearing was held. Once again, claimant and Dr. Nogueras testified. Although claimant maintained that he had not worked since 1978, the ALJ found that he had earnings in 1980 and 1981 and that the question was whether claimant was disabled between September 11, 1981 (his previously alleged date of onset) and June 30, 1983 (when his insured status expired). The ALJ found that during this period, claimant suffered from an anxiety related disorder and from alcohol abuse in remission. This finding was based largely on the testimony of Dr. Nogueras. (Tr. 27, 29). This condition resulted in only moderate restrictions on claimant's activities of daily living and social ____________________ 4. The SSA's prior denial assumed that claimant was insured through September 30, 1987. (Tr. 250). 5. We note that the ALJ who adjudicated claimant's third application was not the same ALJ who denied his second application. -4- functioning during the relevant period, and seldom resulted in deficiencies of persistence, concentration or pace. The ALJ further found that claimant never suffered from episodes of deterioration or decompensation in work or work-like settings. (Tr. 20). Where the evidence in the record indicated that claimant's past jobs were unskilled, simple to perform, and required no complex mental functions, the ALJ concluded that claimant's anxiety disorder did not preclude him from performing his past work before June 30, 1983. The Appeals Council declined claimant's request for review, thus rendering this second ALJ's decision final. (Tr. 5-6). Claimant sought judicial review under 42 U.S.C. 405(g). The district court adopted the report of a magistrate judge and found that claimant had failed to prove that he was disabled before June 30, 1983. This appeal followed. II. In evaluating any disability claim based on an alleged mental impairment, the SSA must follow the sequential evaluation process outlined in 20 C.F.R. 404.1520 and 404.1520a. See Goodermote v. Secretary of Health and Human ___ __________ _____________________________ Services, 690 F. 2d 5, 6-7 (1st Cir. 1982). Bearing in mind ________ that Social Security proceedings are not, strictly speaking, adversarial, Deblois v. Secretary of Health and Human _______ __________________________________ Services, 686 F.2d 76, 80 (1st Cir. 1982), it remains the ________ claimant's burden to prove that his mental impairment -5- disabled him from performing his past relevant work before ______ his insured status expired. See, e.g., Santiago v. Secretary ___ ____ ________ _________ of Health and Human Services, 944 F.2d 1, 5 (1st Cir. 1991); ____________________________ Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985); Deblois, ____ _______ _______ 686 F.2d at 77. Our review is limited to determining whether the findings of the Secretary are supported by substantial evidence on the record as a whole. Ortiz v. Secretary of _____ ____________ Health and Human Services, 955 F.2d 765, 769 (1st Cir. ____________________________ 1991)(per curiam). As it is undisputed that claimant's insured status expired on June 30, 1983, the issue here is whether substantial evidence supports the Secretary's nondisabled finding for the period before this date. It is not enough for the claimant to establish that an impairment which disabled him from working after his insured status expired had its _____ roots before then. Deblois, 686 F.2d at 79. While there is _______ evidence indicating that claimant's condition may have reached disabling severity after 1986, on balance, we are compelled to agree that claimant has not shown that he was disabled before June 30, 1983. We review the record. III. The earliest medical records indicate that claimant reported experiencing nervous problems and daily alcohol consumption in 1976 while securing treatment for trauma to his left knee. He did not seek treatment for his nerves -6- then. (Tr. 358-59). He sought outpatient treatment at the Clinica Externas de Adultos on August 20, 1979. He was then thirty-nine years old. He reported that he had quit his job with the Department of Natural Resources because his "nerves betray[ed]" him and he claimed to have been unemployed for over a year. (Tr. 171). Mental examination found claimant tense and anxious but approachable, in contact with reality, and with "very acceptable" judgment. (Tr. 167). An anxiety reaction was diagnosed and claimant was placed on Vistaril (a tranquilizer). (Tr. 167). No further treatment is reported for approximately two years.6 Claimant consulted Dr. Ferdinand Berrios in August 1981 complaining of chest pain and shortness of breath associated with states of marked anxiety. (Tr. 417-27). Dr. Berrios diagnosed a severe anxiety neurosis with depressive traits. He prescribed antianxiety medications (Adapin and Vistaril) and Mellaril (an antipsychotic) and recommended that claimant obtain psychiatric treatment. Claimant sought such treatment at the outpatient clinic of the Bayamon Regional Hospital, again complaining of problems with his nerves. At this time it ____________________ 6. As noted above, the SSA's earnings records indicate that claimant worked during this two year period. (Tr. 296). Apart from his own statements, claimant submitted no evidence to rebut the SSA's earnings record. We think it a relatively simple matter for claimant's counsel to secure verification of claimant's alleged dates of employment and departure therefrom. Absent such evidence, we have no cause to second- guess the SSA's findings. -7- was reported that claimant made excessive use of alcohol. In September 1981 claimant was diagnosed to be suffering from an anxiety reaction with dissociative features of hysterical origin. Mellaril and Adapin were continued and counselling was prescribed. (Tr. 170). In follow-up visits over the next seven months claimant reported that the medications were not helping and that he experienced hallucinations. Yet in May 1982 he was relevant, coherent and oriented in all spheres. (Tr. 175). Mellaril was discontinued and Vistaril restarted. (Tr. 176). A consulting psychiatrist, Dr. Miguel Bravo, evaluated claimant for the SSA on October 15, 1982. (Tr. 411-13). Dr. Bravo interviewed claimant with one of his cousins, who reported that claimant heard voices and knocking sounds and disappeared from home for days at a time during which he wandered the neighborhood and became disoriented. Claimant reported that he spent his days walking around the neighborhood, occasionally helping with the housework, watching T.V. or listening to the radio. He related well to family and neighbors who visited him. Personal hygiene was adequate. Dr. Bravo reported that claimant appeared anguished during his mental examination and that he cried, with thought content centered around his difficulty keeping a job. He expressed himself with difficulty, exhibiting thought blocking, flight of ideas and occasional incoherence. -8- His intellect appeared below average and he was easily distracted. He was disoriented in time and place while oriented in person. Memory was deteriorated for all events and his affect was depressed. Judgment and insight were null. Dr. Bravo diagnosed a chronic undifferentiated schizophrenia and found that claimant was not able to handle funds.7 Shortly after Dr. Bravo's evaluation claimant's internist (Dr. Berrios) opined that claimant was disabled. (Tr. 418, 439). Claimant was evaluated for the SSA again in March 1983 by another psychiatrist, Dr. Mojica Sandoz.8 Mental examination found claimant unshaven though clean, exhibiting slight psychomotor retardation. He was slightly anxious and tense, but accessible, cooperative and frank. He did not show a significant impairment in his capacity for ____________________ 7. Another consultant, Dr. Ramon Freese Suarez, (an internist and cardiologist), evaluated claimant in November 1982. He found a neuropsychiatric condition, severe lower leg varicosities and gastritis. (Tr. 429). Dr. Freese's report indicates that claimant reported that he had worked in several factories in New York but was thrown out of jobs due to his nervous condition. (Tr. 426). In contrast to other medical records, Dr. Freese's report indicates that claimant was last employed in 1981 by the city of Corazol. (Tr. 426). 8. Claimant told Dr. Mojica that he had not worked since 1977 or 1978, his last job being with the Puerto Rico Department of Natural Resources. He also reported that he wounded himself with a machete while he was so employed, and that he had to quit because his superior did not want him working anymore. He claimed to have been fired from another job as a janitor. (Tr. 444-45). -9- establishing interpersonal relations. (Tr. 445). Though not spontaneous, claimant was logical, coherent and relevant. He exhibited no suicidal or homicidal tendencies nor evidence of hallucinations. He also did not show personality deterioration. There was no evidence of blocking, disorganization, nor difficulty in the formulation and elaboration of ideas. Remote memory was spotty, but recent and intermediate memory were adequate. Noting that claimant's intellectual functioning appeared to be below average, Dr. Mojica diagnosed an unspecified mental retardation and dependent personality disorder. He found claimant able to handle funds. (Tr. 445-46). Claimant returned to the outpatient clinic in Puerto Rico again on May 5, 1983, at which time he reported that the medications were helping him and that he was more calm. (Tr. 177). No medical treatment is reported for more than a year after claimant's insured status expired. Claimant returned to the outpatient clinic on October 15, 1984, claiming he had been absent during the interim because he was caring for his sick mother. He appeared clean, anxious and oriented in all spheres. (Tr. 179). His memory and intellect were adequate, although judgment and insight were poor. A mild to moderate anxiety disorder was diagnosed and Vistaril was again prescribed. (Tr. 179-80). An individualized treatment plan dated November 28, 1984 described claimant's anxiety disorder -10- as chronic and mild, while indicating that claimant had exhibited good adaptation over the last year. (Tr. 181-184). A February 15, 1985 treatment summary from the Mental Health Center indicated that claimant then had a mild to moderate anxiety disorder and was partially limited in his ability to do his usual work. (Tr. 190-91). The medical evidence following claimant's return to New York in March 1985 suggests that his condition periodically became more dire. After filing his second application for disability benefits, claimant allegedly began suffering from hallucinations and tried to kill himself. He was hospitalized at the South Beach Psychiatric Center between May 17-25 and diagnosed with an atypical psychosis. A long history of alcohol abuse was identified, including blackouts, delirium tremens and one prior suicide attempt.9 Claimant was treated with Haldol (an antipsychotic) and psychotherapy and referred to Alcoholics Anonymous. (Tr. 199-206). Shortly after his discharge from the South Beach Psychiatric Center claimant was evaluated for the SSA by Dr. J. Fiks. Claimant appeared manipulative, demanding, and vague, exhibiting a tendency to overreact and exaggerate. He was able to provide information to suit his needs but otherwise noncommittal. His reliability was poor. Dr. Fiks diagnosed ____________________ 9. Claimant reported that he had stopped drinking one month before his admission. (Tr. 199). -11- a passive-aggressive personality disorder and questioned claimant's ability to handle funds. (Tr. 207-08). Claimant secured further treatment from the New York Office of Mental Health.10 He appeared to improve in the fall of 1985 and remained asymptomatic despite decreased medications. At that time, claimant again was caring for his mother, who had had surgery. Another psychiatric evaluation from November 1985 indicated that claimant could not tolerate the pressure of a competitive work setting due to the likleihood of decompensating under stress. (Tr. 212). The SSA obtained two assessments of claimant's mental residual functional capacity (RFC) from two nonexamining consultants. On July 17, 1985, Dr. Alan Kaye reported that claimant was limited only in his capacity to understand, remember and carry out technical job instructions. He opined that claimant was capable of work. (Tr. 143, 146). On December 16, 1985, Dr. A. Stockton reported that claimant was moderately limited in his abilities to understand, remember and carry out detailed instructions, interact with the general public, accept instructions and criticism, and to respond to changes in the work setting and set realistic goals. (Tr. 148-50). No other significant limitations were noted. ____________________ 10. Claimant also had surgery for varicose veins in his legs in June 1985. (Tr. 233). -12- 12 Claimant returned to Puerto Rico in January 1986, where his second application was denied. On August 2, 1986, claimant was evaluated by Dr. Cordero Alonso, a psychiatrist, in connection with his third application (Tr. 458-63). Dr. Cordero diagnosed a schizophrenic syndrome with histrionic features. He found claimant unable to handle funds. Another psychiatrist, Dr. Lopez Flores, evaluated claimant on March 7, 1987. He diagnosed a moderate severe dysthymic disorder with agitation and psychotic traits. (Tr. 467-68).11 Two nonexamining consultants made RFC assessments. On May 15, 1987, psychologist Orlando Reboredo found that claimant suffered from recurrent major depression with anxiety and psychotic episodes. He found claimant was not capable of ___ work and that his condition met listing 12.04. (Tr. 335- 43).12 However, Dr. Reboredo was not asked to focus on the ____________________ 11. In this interview, claimant reported that he had not worked since 1977 and that he had always had mental problems but that these were exacerbated after a sister died in 1985. Claimant was then being treated with Halcion (a sleeping pill) and Mellaril. Claimant denied using alcohol and reported that his mother was insane. Mental examination found claimant to be logical, coherent and relevant, perception unstable, affect sad, and his mood was anxious and depressed. His concentration and attention span were below par. He was oriented only in person, and exhibited significant memory defects. Judgment lacked insight. (Tr. 468). 12. Dr. Reboredo indicated that claimant suffered from marked restrictions of his activities of daily living and difficulties maintaining social functioning, with frequent deficiencies of concentration, persistence and pace, and one or two episodes of deterioration or decompensation in work or work-like settings. -13- 13 period between 1978 and 1983. Another psychologist, Dr. Pedro Ivan Garcia, reviewed the evidence with a specific eye to evaluating claimant's condition before his insured status expired on June 30, 1983. He indicated that that evidence pointed to a nonsevere anxiety disorder that did not meet or equal a listing. (Tr. 344, 346).13 IV. On appeal, claimant argues that the SSA's decision is not supported by substantial evidence on the record as a whole because the Secretary relied on isolated statements supporting a non-disabled finding while ignoring what claimant says is "overwhelming evidence" to the contrary. The argument overlooks the fact that most of the evidence that might support a disabled finding was from the period after claimant's insured status expired. Medical evidence generated after a claimant's insured status expires may be considered for what light (if any) it sheds on the question whether claimant's impairment reached disabling severity before his insured status expired. See, e.g., Deblois, 686 ______ ___ ____ _______ F.2d at 81 (holding ALJ should have asked consulting experts whether pro se claimant's mental impairment reached disabling ___ __ ____________________ 13. Dr. Ivan Garcia noted only slight restriction of claimant's activities of daily living and difficulties maintaining social functioning. He reported that claimant seldom experienced deficiencies of persistence, concentration or pace, and that he never suffered from episodes of deterioration in work or work-like settings. (Tr. 352). -14- 14 severity before his insured status expired); Alcaide v. _______ Secretary of Health and Human Services, 601 F. Supp. 669, ________________________________________ 672-73 (D.P.R. 1985)(applying Deblois where claimant had _______ counsel). See also Basinger v. Heckler, 725 F.2d 1166, 1169 ___ ____ ________ _______ (8th Cir. 1984)(collecting cases). Here, the ALJ did not specifically mention evidence from the post-1984 period, finding that "no consideration must be given to the impairment as it existed at a time too far removed from the date when claimant's insured status expired." (Tr. 20). We cannot fault the ALJ for this ruling. The Appeals Council's remand order specifically directed the ALJ to consider the 1983 reports of Drs. Mojica and Freese in issuing a new decision. With the exception of Dr. Garcia's PRTF - which found that claimant's anxiety disorder was not even severe during the insured period - the evidence generated after claimant's insured status expired did not address claimant's condition before June 1983. Rather, the medical evidence and SSA evaluations addressed claimant's condition as of the time he was examined. Thus, the ALJ did not err in declining to review evidence too remote in time from the insured period to be probative of claimant's condition before June 1983. Cf. ___ Tremblay v. Secretary of Health and Human Services, 676 F.2d ________ ______________________________________ 11, 13 (1st Cir. 1982)(ALJ had no obligation to refer medical records from period after claimant's insured status expired to medical advisor). -15- 15 Substantial evidence supports the ALJ's conclusion that claimant was not disabled from his past work before his insured status expired. The medical evidence through 1984 disclosed a mild to moderate anxiety disorder that was managed by medications.14 There is a significant gap in treatment between 1979 and 1981, during which time claimant worked. After filing for benefits and securing further treatment in 1982, claimant again stopped treatment between May 1983 and October 1984 to care for his sick mother. Such activity tends to support the conclusion that claimant retained the capacity to work. Dr. Nogueras had previously testified that claimant remained capable of performing simple repetitive tasks even when the more dire evidence from 1985 onward was taken into account. (Tr. 67-68). The ALJ could reasonably conclude that claimant retained this capacity before June 1983. Claimant argues that a vocational expert was required to explain how his severe mental impairment affected his ability to sustain gainful employment. While this might be true had ____________________ 14. The ALJ relied on Dr. Nogueras' testimony in rejecting Dr. Bravo's schizophrenia diagnosis. Dr. Nogueras discounted schizophrenia because the mental health clinic then treating claimant did not make this diagnosis and because the medical records did not reveal persistent psychotic symptoms. (Tr. 62, 104). Dr. Nogueras opined that claimant's alleged hallucinations were more likely due to alcohol withdrawal. Such conflicts in the evidence are for the Secretary to resolve. Lizotte v. Secretary of Health and Human Services, _______ ______________________________________ 654 F.2d 127, 128 (1st Cir. 1981)(citation omitted). -16- 16 the ALJ determined that claimant could no longer perform his past work, see, e.g., Ortiz v. Secretary of Health and Human ___ ____ _____ _____________________________ Services, 890 F.2d 520, 524 (1st Cir. 1989)(noting that ________ vocational expert typically required where nonexertional impairment significantly limits claimant's ability to perform jobs he is otherwise exertionally capable of performing), that is not the case here. The record supports the ALJ's view that claimant retained the capacity to perform his past unskilled work before June 1983. Further evidence was not necessary. Finally, claimant says that the fact that he was fired from his past jobs undermines the ALJ's conclusion that claimant remained capable of performing his past work and the ALJ's subsidiary finding that claimant never suffered episodes of deterioration or decompensation in work or work- like settings. The sole evidence that claimant was fired came from the claimant himself, as he reported this to various medical providers and SSA representatives. However, claimant proved to be an unreliable and inconsistent source of information. He identified various dates of employment for his past work, and alternately reported that he had been fired or quit his job with the Department of Natural Resources. Claimant's contention that he was fired by the Department of Natural Resources in 1978 is contradicted by the SSA's earnings record, which indicated that he worked -17- 17 until September 11, 1981. (Tr. 298). The ALJ did not find claimant wholly credible. Absent evidence corroborating claimant's assertions from the relevant time, we think the ALJ's finding may stand. Judgment affirmed. __________________ -18- 18