Velez v. SSA                    CV-98-598-M    10/19/99

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE


Paul L. Velez,
     Claimant

     v.                                    Civil No. 98-598-M

Kenneth S. Apfel, Commissioner,
Social Security Administration,
     Defendant.


**O R D E R**


     Claimant Paul L. Velez moves pursuant to 42 U.S.C.

§ 405(g) to reverse the Commissioner's decision denying his

application for Social Security Disability Insurance benefits

under Title II of the Social Security Act (the "Act"), 42 U.S.C.

§ 423.  The Commissioner moves for an order affirming the

Commissioner's decision.  For the reasons that follow, the

decision of the Commissioner is affirmed.


Standard of Review

I.   Properly Supported Findings by the Administrative
     Law Judge ("ALJ") are Entitled to Deference.

     Pursuant to 42 U.S.C. § 405(g), the court is empowered "to

enter, upon the pleadings and transcript of the record, a

judgment affirming, modifying, or reversing the decision of the

Secretary [now, the "Commissioner"], with or without remanding

the cause for a rehearing."  Factual findings of the Commissioner

are conclusive if supported by substantial evidence.  See 42

U.S.C. §§ 405(g), 1383(c)(3); Irlanda Ortiz v. Secretary of

<u>Health and Human Services</u>, 955 F.2d 765, 769 (1st Cir. 1991).[1] Moreover, provided the ALJ's findings are supported by substantial evidence, the court must sustain those findings even when there may be substantial evidence supporting the claimant's position. <u>See</u> <u>Gwathney v. Chater</u>, 104 F.3d 1043, 1045 (8th Cir. 1997) (The court "must consider both evidence that supports and evidence that detracts from the [Commissioner's] decision, but [the court] may not reverse merely because substantial evidence exists for the opposite decision."). <u>See also</u> <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995) (The court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.").

In making factual findings, the Commissioner must weigh and resolve conflicts in the evidence. <u>See</u> <u>Burgos Lopez v. Secretary of Health & Human Services</u>, 747 F.2d 37, 40 (1st Cir. 1984) (citing <u>Sitar v. Schweiker</u>, 671 F.2d 19, 22 (1st Cir. 1982)). It is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner] not the courts." <u>Irlanda Ortiz</u>, 955 F.2d at 769 (citation omitted). Accordingly, the court will give deference

---

[1]Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938). It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. <u>Consolo v. Federal Maritime Comm'n.</u>, 383 U.S. 607, 620 (1966).

to the ALJ's credibility determinations, particularly where those determinations are supported by specific findings.  See Frustaglia v. Secretary of Health & Human Services, 829 F.2d 192, 195 (1st Cir. 1987) (citing Da Rosa v. Secretary of Health and Human Services, 803 F.2d 24, 26 (1st Cir. 1986)).

II.   The Parties' Respective Burdens.

An individual seeking Social Security disability benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 416(i)(1)(A).  The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment.  See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health and Human Services, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden, the claimant must prove that his impairment prevents him from performing his former type of work.  See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985) (citing Goodermote v. Secretary of Health and Human Services, 690 F.2d 5, 7 (1st Cir. 1982)).  Nevertheless, the claimant is not required to establish a doubt-free claim.  The initial burden is satisfied by the usual civil standard: a "preponderance of the evidence."  See Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982).

In assessing a disability claim, the Commissioner considers objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience. See, e.g., Avery v. Secretary of Health and Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote, 690 F.2d at 6. Provided the claimant has shown an inability to perform his previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that he can perform. See Vazquez v. Secretary of Health and Human Services, 683 F.2d 1, 2 (1st Cir. 1982). If the Commissioner shows the existence of other jobs which the claimant can perform, then the overall burden remains with the claimant. See Hernandez v. Weinberger, 493 F.2d 1120, 1123 (1st Cir. 1974); Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H. 1982).

When determining whether a claimant is disabled, the ALJ is required to make the following five inquiries:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals a listed impairment;

(4) whether the impairment prevents the claimant from performing past relevant work; and

(5) whether the impairment prevents the claimant from doing any other work.

4

20 C.F.R. § 404.1520. Ultimately, a claimant is disabled only if his:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2)(A).

With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm his decision.

## Background

Pursuant to this court's Local Rule 9.1(d), the parties have filed a Joint Statement of Material Facts. As this document is part of the court's record (document no. 7), a detailed factual background need not be provided in this order. Accordingly, only a brief account of the case's procedural history follows.

Claimant filed his application for Title II disability benefits on June 2, 1994. He alleged that he became unable to work due to disability on December 15, 1993. He stated his disabling condition to be chronic hepatitis C, and noted that he had "had depression all [his] life and at times will quit [work] and may not [work] again for an extended period of time." (R. at 56.)[2] Conditions later reported to the Social Security Administration included cancer (non-Hodgkins lymphoma in the

---

2Citations to the record are to the certified transcript of record filed by the Commissioner with the court.

5

spleen, which was successfully treated by surgical removal of the spleen), anxiety, chronic back pain, and chronic back spasm.

Claimant's application was denied on June 29, 1994, and again on reconsideration on November 25, 1994. A hearing was held before an ALJ on April 3, 1995. The ALJ issued a decision denying claimant's application and the Appeals Council denied claimant's request for review. Claimant then appealed to this court.

On August 10, 1997, the court reversed and remanded the case on an assented-to motion to remand by the parties. The Appeals Council, in turn, remanded the case to the ALJ. A hearing before the ALJ was held on February 10, 1998, at which claimant, his wife, and a vocational expert testified. The ALJ again denied claimant's application by decision dated May 4, 1998.

The ALJ found that claimant was a younger individual (then 44 years old) with a high school education and prior work experience in skilled, semi-skilled and unskilled occupations with exertion requirements ranging from sedentary to heavy work. He found that claimant met the Act's special earnings requirements on his alleged onset date and through December 31, 1996. Although claimant worked beyond his alleged onset date, the ALJ found that he had not engaged in substantial gainful activity since July 31, 1994. The ALJ also found that claimant had impairments that were severe but that did not meet or equal a listed impairment. At step four of the sequential analysis, the ALJ determined that claimant had the residual functional capacity

("RFC") to perform light work, with the limitation that claimant should avoid "work requiring attention to complex tasks or frequent or close interaction with the supervisors and coworkers." (R. at 253.) Given that RFC, the ALJ found that claimant could not perform any of his past relevant work, but could engage in other work existing in significant numbers in the national economy. Thus, the ALJ found, at step five of the sequential analysis, that claimant was not disabled.

Claimant filed exceptions to the ALJ's decision with the Appeals Council, which found no basis for assuming jurisdiction. Thus, the ALJ's decision became the final decision of the Commissioner. Claimant now appeals to this court.


## Discussion

Claimant challenges the ALJ's findings regarding his psychological limitations. In his hypothetical question to the vocational expert ("VE"), the ALJ asked her to assume that the claimant's "ability to do a full range of light work was reduced by poor concentration which means that he should be limited to simple, non-complex tasks that can be done on a routine . . . repetitive fashion." (R. at 302.) The VE was also asked to assume that claimant's remaining occupational base was "further reduced by the fact that he should have infrequent to limited contact with supervisors and co-workers." Id. The VE testified that under these assumptions, there existed unskilled jobs in the national economy that claimant could perform, such as small

7

product assembly, small product packing, light cleaning, and office help.

The ALJ then altered the hypothetical, adding a number of limitations, including the inability to "perform even simple tasks or [carry out] simple instructions." (R. at 304.) Also added were the assumptions that claimant "would be an unreliable worker as far as production is concerned. He would have difficulty following work rules, using judgment, dealing with any work stresses." On this set of assumptions, the VE opined that there were no unskilled jobs in the national economy that claimant could perform.

The ALJ framed his hypothetical questions to roughly correspond to the periods before and after 1997, as new evidence presented after the prior hearing "seem[ed] to show some additional impairments." (R. at 304.) Claimant challenges this finding, arguing that the ALJ failed to appreciate how far his mental health had declined by December 31, 1996. Claimant notes that on December 1, 1997, Dr. Paul K. Friend opined that claimant could not understand, remember and follow even simple instructions. Claimant then argues that that functional limitation, which the VE testified would foreclose all unskilled jobs, was already present in December, 1996, and that he was therefore disabled prior to the expiration of his insured status.

Claimant "ha[s] the burden of establishing by credible evidence that his mental impairment was of a disabling level of severity as of" the date his insured status expired. Deblois v.

8

<u>Secretary of Health and Human Services</u>, 686 F.2d 76, 79 (1ˢᵗ Cir. 1982).  Claimant cites physicians' office records from November, 1994, to December 1, 1997, which report symptoms of claimant's depression and anxiety.  However, "[i]t is not sufficient for [claimant] to establish that his mental impairment had its roots prior to" his date last insured; it must have reached disabling severity by then.  <u>Id</u>.

On May 12, 1994, claimant completed an Activities of Daily Living form in which he stated that he watched four to six hours of television a day and, on good days, read for two to four hours.  He said that he could remember what he watched and read. He also reported having no difficulty following written or verbal instructions "unless [he] [didn't] want to do them."  (R. at 89.) He did report difficulty concentrating, explaining that he was distracted by thoughts of his ill health.

In an intake assessment conducted on November 4 and 8, 1994, Michael H. Potter, M.Ed. CADAC, ICADC, NCAC II, noted that claimant's "[l]evel of alertness was questionable," but that his "thought form seemed to be goal directed and logical."  (R. at 213.)  In addition, Mr. Potter found no cognitive disruption and opined that claimant "had ability for abstract thinking."  (R. at 214.)  Mr. Potter further found that claimant "shows a minimal degree of insight, but does appear to have the capacity to understand his difficulties and symptomatology as well as help to resolve them."  <u>Id</u>.

On November 15, 1994, Dr. Linda G. Cross conducted a psychiatric evaluation of claimant. Claimant reported to Dr. Cross that his concentration was poor and his thinking confused. (R. at 219.) Dr. Cross described claimant as morbidly depressed, but also found him to be critical, analytical, and of above average intelligence. She found his judgment to be "[w]ithin normal limits of formal testing." (R. at 222.)

On June 22, 1995, claimant was seen at Dartmouth-Hitchcock Psychiatric Associates for a self-referred emergency evaluation for depression. The practitioner who completed the initial assessment noted that claimant experienced "some lapses of concentration" while describing his history. (R. at 409.) With regard to claimant's thought processes, the following was reported: "Many losses of train of thought, otherwise generally goal-oriented. No evidence of psychosis." (R. at 409.) Claimant's cognitive function was noted to be "O.K." Id.

Claimant was again seen at Dartmouth-Hitchcock Psychiatric Associates on August 28, 1997, after his insured status expired. An initial evaluation was conducted by Dr. Robert Zepf, who found that claimant had logical thought processes and "no looseness of association or flight of ideas." (R. at 402.)

On December 1, 1997, Dr. Paul K. Friend, claimant's primary care provider, completed a medical assessment of claimant's ability to do work-related activities. Dr. Friend rated claimant's ability to maintain his personal appearance as fair and the extent of all other work adjustment capabilities as poor

10

or none.  Significantly, he opined that claimant had poor or no ability to understand, remember and execute even simple work instructions.  Dr. Friend noted, however, that "[m]ost of [claimant's] symptoms are subjective type symptoms that are very difficult to evaluate physically and on physical exam."  (R. at 375.)

In his May 4, 1998 decision, the ALJ conceded that claimant's "mental impairments have been underlying conditions throughout much of the period under review here."  (R. at 252.)  The ALJ found that claimant's mental impairments imposed some functional restrictions on him, but noted that "[s]ome of these restrictions may have increase[d] since his date last insured."  Id.  He concluded:

> Prior to December 31, 1996, however, the claimant could not have performed tasks that would require that he attend to tasks requiring attention to complex job tasks.  But he could attend to simple non-complex tasks.  He was able to read and follow a television story.  He was able to care for his children and keep appointments.[3]  He could have performed simple tasks.  Because of his personality disorder, however, he could not have worked in job situations where he would have to be under close supervision or in close contact with coworkers.

Id.

The ALJ's decision is supported by substantial evidence.  The evidence prior to December 31, 1996, reveals that while claimant may have experienced some lapses in concentration, he was an otherwise lucid, logical, intelligent individual.  The

_____

3The court notes that claimant's medical records do show a number of canceled and missed appointments, but this does not detract from the ALJ's conclusion.

11

court cannot say that there was not substantial evidence in the record to support the conclusion that prior to December 31, 1996, claimant could have remembered, understood and carried out simple job instructions. Accordingly, claimant's motion is denied and the Commissioner's decision is affirmed.

Conclusion

For the foregoing reasons, the claimant's motion for order reversing decision of the Commissioner (document no. 5) is denied and the Commissioner's motion for order affirming the decision of the Commissioner (document no. 6) is granted.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

October 19, 1999

cc: Stanley H. Robinson, Esq.
David L. Broderick, Esq.