Blanca Arroyo ELEUTICE,
Plaintiff(s),

v.

COMMISSIONER OF SOCIAL
SECURITY, Defendant(s).

Civil No. 00–2080 (JAG).

United States District Court,
D. Puerto Rico.

July 31, 2003.

Raymond Rivera–Esteves, Juan Hernandez Rivera & Assoc., San Juan, PR, for Plaintiff.

Lilliam E. Mendoza–Toro, Camille L. Velez–Rive, United States Attorney's Office, Torre Chardon, San Juan, PR, for Defendant.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

Pending before the Court is plaintiff Blanca Arroyo Eleutice's ("Arroyo") objections to United States Magistrate–Judge Justo Arenas' Report and Recommendation (Docket No. 20) entered on June 25, 2002, recommending that the final determination of the Administrative Law Judge ("ALJ") that denied her claim for disability status and disability insurance benefits under the Social Security Act be affirmed and her action be dismissed. For the reasons discussed below, the court **ADOPTS**

the Magistrate–Judge's recommendation and dismisses Arroyo's complaint.

## Standard of Review

A district court may, on its own motion, refer a pending matter to a United States Magistrate–Judge for a report and recommendation. *See* 28 U.S.C. §§ 636(b)(1)(B); Fed.R.Civ.P. 72(b); Rule 503, Local Rules, District of Puerto Rico. Pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 510.2, the adversely affected party may contest the report and recommendation by filing written objections within ten days of being served with a copy of the order. 28 U.S.C. §§ 636(b)(1). The Court must then make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. *See United States v. Raddatz,* 447 U.S. 667, 673, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Lopez v. Chater,* 8 F.Supp.2d 152, 154 (D.P.R.1998). The Court may accept, reject, or modify, in whole or in part, the Magistrate–Judge's recommendations. "Failure to raise objections to the report and recommendation waives [that] party's right to review in the district court and those claims not preserved by such objections are precluded on appeal." *Davet v. Maccarone,* 973 F.2d 22, 30–31 (1st Cir.1992) (citations omitted).

## Procedural Background

Arroyo filed an application for disability insurance benefits on October 31, 1994, alleging that she has not worked since May 30, 1990 (Tr. 100–103). The application was denied and a hearing was held on October 8, 1996 (Tr. 46–61). Upon review of the case, the ALJ found that Arroyo was not under a disability (Tr. 368–382). The case was then reviewed by the Appeals Council, and the Council found sufficient grounds to remand the case for a de novo hearing (Tr. 386–389). After a de novo hearing, the ALJ again determined on December 12, 1998, that Arroyo was not under a disability (Tr. 16–43). On June 30, 2000 the Appeals Council denied a request for review of the ALJ's decision, rendering the ALJ's decision final on behalf of the Commissioner of Social Security (Tr. 4–5). On August 24, 2000 Arroyo filed a petition requesting judicial review of the ALJ's decision denying her disability status and benefits. The case was referred to Magistrate–Judge Justo Arenas for a report and recommendation. After reviewing all the evidence in the record, Magistrate–Judge Arenas concluded that the ALJ's decision was based on sound reasoning and in compliance with the substantial evidence rule; therefore, he recommended that the ALJ's decision be affirmed, and that the petition for judicial review be denied (Docket No. 20). Arroyo then filed a timely objection to the Magistrate–Judge's Report and Recommendation alleging that the Magistrate–Judge had erred in finding that the ALJ's decision was supported by the evidence and in compliance with the substantial evidence rule (Docket No. 32).

## Factual Background

Arroyo alleges disability as of May 30, 1990 due to Recurrent Bronchial Asthma, Allergic Rhinitis, Irritable Colon, Depression and Anxiety, Severe Lumbo Sacral Pain, Gastrointestinal Problems, Mild Obstructive Lung Dysfunction, Muscle Spasms, and Migraine by History (Tr. 234, 237, 240, 311). Arroyo's disability status for the period between May 30, 1990 and May 14, 1993 has been adjudicated and there is no basis to reopen that judgment; therefore the claim at hand is based on the period between May 14, 1993 and March 31, 1996.

The record shows that between the years of 1987 and 1995 Arroyo saw a number of doctors and medical specialists regarding her bronchial asthma problems

with similar results (Tr. 239–301). On April 3, 1992 Dr. Antonio Beltran ran respiratory tests on Arroyo concluding that there was a minimal limitation of airflow based on the lung dynamics (Tr. 251). On February 14, 1995 Dr. Miguel Vega, a Neumologist, performed a pulmonary function test and reported that Arroyo had a "mild obstruction lung dysfunction ..." and that there was "a partial but good response to broncholidators" (Tr. 241).

The record also shows that Arroyo saw an allergist on a regular basis, received allergy shots on a weekly basis, and underwent immunotherapy (Tr. 252–297). The allergy tests showed that Arroyo's allergies were sensitive to a number of things, but that the symptoms and treatment were stable. *Id.* There is an occasion on record (March 20, 1993) when plaintiff was admitted to the hospital for acute asthma and bronchitis and was released two days later (Tr. 303).

Arroyo has also undergone psychiatric evaluations. A Psychiatric Review Technique Form (PRTF) was performed by Dr. Aida Girod on March 17, 1995, that states that while a severe impairment does exist, said **impairment does not meet or is not equal to a listed impairment** (Tr. 108–109). None of the assessments that Dr. Girod marked in support of her medical disposition reached a level greater than "moderate limitation" or "often" (Tr. 108–116). Dr. Girod also stated that Arroyo could perform two-step tasks and that she could maintain a level of concentration for periods of at least two hours (Tr. 119). On October 26, 1995 Dr. Belma (Illegible) confirmed and adopted the PRTF prepared by Dr. Girod (Tr. 109).

### Discussion

Arroyo has objected to the Magistrate-Judge's Report and Recommendation, denying her petition for judicial review on the final decision entered by the ALJ. Arroyo's argues that the ALJ's final deci-

sion was erroneous because it was not backed by substantial evidence. (Docket No. 32).

### I. Did the ALJ have substantial evidence to conclude that Arroyo did not suffer from concentration deficiencies?

In order to establish entitlement to disability benefits, Arroyo carries the initial burden of proving that she is disabled within the meaning of the act. *See, e.g., Deblois v. Secretary of HHS,* 686 F.2d 76, 79 (1st Cir.1982). To establish disability, Arroyo must show that she meets the definition of disability as established by the Social Security Act § 216(i)(1), as amended 42 U.S.C. § 416(i)(1)and § 423(d)(1), which requires:

> ... inability to engage in any substantial gainful activity by reason of any medical determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period not less than 12 months.

In addition, Section 223(d)(2)(A), 42 U.S.C. § 423(d)(2)(A) also requires that the impairment be of such severity that, considering her age, education, and work experience, Arroyo could not perform her previous work nor would she be able to perform any other type of substantial gainful work. There must be medical evidence supporting the physical or mental impairment claimed by Arroyo, for subjective complaints of symptoms and pain alone will not suffice as medical evidence. 42 U.S.C. § 423(d)(5)(A), *Toledo v. Secretary of HEW,* 308 F.Supp. 192 (D.P.R.1970), 435 F.2d 1297 (1st Cir.1971).

Arroyo's ability or inability to perform any substantial gainful work is based on the medical evidence provided, her subjective complaints, and her age, education background, and work history. *Toledo,*

308 F.Supp. 192 (D.P.R.1970). It is the ALJ's prime responsibility to review the record and base his decision on the substantial evidence provided. *Rodriguez v. Secretary of HHS*, 647 F.2d 218, 222 (1st Cir.1981). The ALJ also has the ability to draw permissible inferences in order to resolve any issues of credibility or conflicts of facts. *Id.*

█ Based on the evidence provided, the ALJ's determination on Arroyo's concentration deficiencies was properly supported. According to the PRTF report, Arroyo is "moderately limited" in concentration, which is a level two on a five point scale. At the end of the PRTF, Dr. Girod concludes that Arroyo would be able to remember and perform two-step commands and that she would be able to concentrate for a consistent two-hour period (Tr. 119). Furthermore, the ALJ's decision is supported by the Vocational Expert's testimony (VE)(Tr. 21). After listening to Arroyo's testimony and considering her symptoms, the VE advised that there were a number of positions that Arroyo could hold with little or no complications (Tr. 84–98). Ultimately, it appears that the ALJ had substantial supporting evidence and properly used his discretion in making a determination on Arroyo's mental impairment.

## II. Was the application of the Medical–Vocational Guideline ("the Grid") appropriate for the case at hand?

Arroyo has the initial burden of proving that she is unable to perform her former job or any substantial gainful work. *Deblois*, 686 F.2d at 79. Once Arroyo establishes both of these elements, the burden shifts to the Secretary of Health and Human Services to show the existence of possible jobs that Arroyo could perform, given her limitations. *Sherwin v. Secretary of HHS*, 685 F.2d 1, 2 (1st Cir.1982).

The Medical Vocational Guideline or Grid is used to simplify the ALJ's task of determining whether a claimant is able to perform significant gainful work, which is determinative in establishing claimant's disability or non-disability status. *Id.* The Grid also can replace testimony from a vocational expert (VE), therefore making the entire process more efficient. Id. at 4.

The Grid consists of four factors (age, education, work experience, and residual work capacity) that are used to determine the existence of a claimant's disability. *Id.* Furthermore, the Grid has three different tables, one each for residual work capacities of "sedentary work," "light work," and "medium work." *Id.* The ALJ selects the appropriate row and table depending on the characteristics of the claimant. *Id.* at 3. If the characteristics of the claimant are borderline or do not fit squarely into a category, then the Grid may still be used to provide guidance for the ALJ's evaluation. *Id.*

█ In the case at hand, the ALJ properly utilized and applied the Grid and its findings. Arroyo argues that her impairments were too severe to have been incorporated by the Grid because she suffered from both a mental impairment of concentration deficiency, as well as from environmental limitations due to her asthma and sensitive allergies(Docket No. 32). Arroyo argues that the combination of the two impairments makes her case too severe for a Grid analysis, and that more weight should have been given to the VE's testimony (Docket No. 32). In *McDonald v. Secretary of HHS*, 795 F.2d 1118, 1120 (C.A.1. 1986), the court established that even when there is a combination of impairments, such combinations do not automatically trigger a severe situation; there must still be medical evidence supporting the alleged severity. The allergist's reports show that Arroyo's allergies were

stabilized through weekly allergy shots and consistent immunotherapy treatment (Tr. 252–297). The medical records also demonstrate that Arroyo suffered from "minimal" or "mild" lung dysfunction, but there is no medical evidence to support a claim of severe impairment, as required by the act (Tr. 251 & 241). Finally, the PRTF prepared by Dr. Girod and confirmed by Dr. Belma stated that Arroyo did not have any severe impairments that met or were equal to the listed impairments in the Act (Tr. 108). Arroyo's symptoms on the PRTF were never assessed to be worse than "moderate" or "often", and the commentary in the PRTF also noted that Arroyo was able to perform two-step tasks and maintain a constant concentration level for two-hour periods (Tr. 110–120). Ultimately, the data provided does not support Arroyo's allegation that either impairment on its own or the combination of impairments met the severity required by the act.

Arroyo argues that the VE's testimony should have been the controlling analysis. This argument has two shortcomings. First, the ALJ has to consider **all** of the evidence on record, and cannot rely merely on the VE's testimony. *Toledo*, 308 F.Supp. at 194. For this purpose it has been established that the Grid may be used and applied as a guide for the ALJ's evaluation, despite the difference in opinion as to the claimant's work limitations. *Sherwin*, 685 F.2d at 4.

The second shortcoming in Arroyo's argument is its reliance on the VE's testimony, for it supports, rather than contradicts, the ALJ's final decision. The ALJ relies on and cites the VE's testimony (Tr. 19), and the VE's testimony confirms the fact that Arroyo is able to perform many substantially gainful jobs (Tr. 91–94). It appears that Arroyo is relying on the answer to the hypothetical scenario posed to the VE at the end of the October 8, 1996 hearing (Tr. 97–98). At the end of the hearing the VE was asked whether a 49 year-old woman with Arroyo's disabilities and asthmatic symptoms who has to give herself a respiratory treatment every two hours, would be able to perform one of the jobs mentioned by the VE. *Id.* The VE answered yes, that Arroyo's concentration and attention could be affected by her medications; however, he emphasized that his answer was based solely on Arroyo's subjective allegations and not on any medical evidence (Tr. 97–98).

Based on the above analysis, it is clear that the ALJ took into consideration all of the evidence and that his final determination was fully supported and grounded on sound reasoning.

*Conclusion*

For the foregoing reasons, the court **ADOPTS** Magistrate–Judge Justo Arenas' Report and Recommendation (Docket No. 20). Arroyo's petition is **DENIED** and the ALJ's final decision denying disability benefits pursuant to section 205(g) of the Social Security Act is **AFFIRMED.** Judgment shall be entered dismissing the complaint with prejudice.

IT IS SO ORDERED

In San Juan, Puerto Rico, this 29th day of July, 2003.