**Caryn L. GREEN, Plaintiff**

v.

**Michel J. ASTRUE, as he is the Commissioner, Social Security Administration Defendant.**

Civil Action No. 07–10014–WGY.

United States District Court,
D. Massachusetts.

Dec. 5, 2008.

Morris Greenberg, Green & Greenberg, Providence, RI, for Plaintiff.

Sonya A. Rao, United States Attorney's Office, Boston, MA, for Defendant.

*MEMORANDUM*

YOUNG, District Judge.

## I. INTRODUCTION

Caryn Green ("Green") brings this Motion to Reverse or Remand in her action against Michael J. Astrue, Commissioner of the Social Security Administration ("Commissioner"). Green seeks to have this Court reverse or remand the decision of the Commissioner in her unsuccessful application for Supplemental Security Income and Social Security Disability Benefits. The Commissioner moves for an order affirming the final decision of the Commissioner.

### A. Procedural Posture

On December 11, 2003, Green filed an application for Supplemental Security Income. On December 19, 2003, Green also filed an application for Social Security Disability Benefits. On both applications, Green alleged disability beginning March 15, 2000. Both claims were denied on March 24, 2004, and, on May 11, 2004, upon a request for reconsideration, the Social Security Administration reevaluated Green's applications and confirmed the decision of the administrative law judge ("hearing officer"). As a result, Green promptly requested and was granted an oral hearing on October 6, 2005, in Providence, Rhode Island. At the hearing,

Green amended the original alleged onset of disability date from March 15, 2000, to January 1, 2004. On December 27, 2005, a hearing officer held that Green did not suffer a disability from January 1, 2004, until the date of his decision and, accordingly, that she was ineligible for Social Security Disability Benefits or Supplemental Security Income benefits.

On December 27, 2005, following the unfavorable decision, Green petitioned the Social Security Appeals Council for a review of the hearing officer's decision. On November 7, 2006, the Appeals Council denied Green's request for review thereby making the hearing officer's decision the final decision of the Commissioner and rendering the matter amenable to judicial review.

On December 29, 2006, Green appealed her case to this Court when she filed her Complaint ("Compl.") [Doc. No. 1] against the Commissioner. On March 29, 2007[1], the Commissioner filed an Answer ("Answer") [Doc. No. 8]. On April 2, 2007, this Court approved a motion for leave to file the Administrative Transcript ("Admin. Tr.") in non-electronic, unredacted form. On August 13, 2007, Green submitted a motion asking the Court to reverse or remand the decision of the Commissioner [Doc. No. 15]. It was supported by an accompanying memorandum ("Pl.'s Br.") [Doc. No. 16]. On September 24, 2007, the Commissioner responded by submitting a motion for an order affirming the decision of the Commissioner [Doc. No. 17], together with a memorandum in support ("Def.'s Br.") [Doc. No. 18].

### B. Facts

At the time of Green's original hearing she was a 43-year-old woman with an eighth-grade education. Pl.'s Br. at 2. She previously had worked as a bartender, retail store clerk, and secretary. *Id.*

As Green is only contesting the decision of the hearing officer as it relates to the psychiatric conclusions, relevant medical facts are largely limited to psychiatric evaluations. Pl.'s Br. at 4. Green claimed disability due to a number of physical, as well as mental, disabilities. Admin. Tr. at 431. The physical conditions that she listed included bilateral knee pain, numbness in her bilateral legs and feet, lumbar and cervical pain, numbness in her bilateral hands, and diabetes type 2. *Id.* She also was diagnosed with breast cancer in January 2003. *Id.* at 203.

Green claims that one of the primary reasons that she is unable to work is mental disability. *Id.* at 431. She lists her mental disabilities as bipolar disorder and depression. *Id.*

On March 13, 2003, Green had a consultative psychological examination by Dr. Steven J. Hirsch. *Id.* at 161. Dr. Hirsch diagnosed her with chronic low-grade depression, personality disorder, and hypertension post-breast cancer. *Id.* at 162. He found no history of physical, emotional, or sexual abuse. *Id.* at 163. He concluded that she was not experiencing any suicidal ideations. *Id.*

Green was a patient at Arbour Counseling Services Center from February 5, 2004, until July 2, 2004. *Id.* at 289–94, 400–02. She was treated for excessive sleeping, depressed affect, and hopelessness. *Id.* at 401.

On March 12, 2004, a Disability Determination Services physician examined

---

**1.** Jo Anne B. Barnhart is listed as the original defendant in the complaint. Michael J. Astrue replaced Jo Anne B. Barnhart as the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue was therefore substituted for Jo Anne B. Barnhart as the defendant in this suit.

Green. *Id.* at 265–273. She determined that Green was physically limited to: occasionally lifting up to twenty pounds; frequently lifting up to ten pounds; standing or walking for a total of six hours during an eight-hour workday; and sitting for a total of six hours during an eight-hour workday. *Id.* at 266.

On March 16, 2004, Green was examined by a Disability Determination Services psychologist, Dr. Summer Stone, who completed a Psychiatric Review Technique Form. *Id.* at 274. Dr. Stone concluded that Green had severe impairments, but they were not expected to last twelve months. *Id.* He diagnosed her as having an affective disorder of bipolar syndrome and determined that her restrictions of daily living, social functioning, maintaining concentration, and persistence were mild. *Id.* at 284. He found insufficient evidence of episodes of decompensation. *Id.*

On May 5, 2004, Green saw another Disability Determination Services psychologist, Dr. Nancy Keuthen. *Id.* at 295. In the Psychiatric Review Technique Form that she completed, Dr. Keuthen similarly found that Green had severe impairments but did not expect them to last more than twelve months. *Id.* at 295. She opined that Green suffered from an affective disorder (bipolar syndrome) as of January 2004, but that by January 2005 her symptoms would be mild. *Id.* at 305. She listed those symptoms as being mild restrictions of daily living, mild difficulties in social functioning, and mild difficulties in maintaining concentration and persistence. *Id.* Dr. Keuthen found insufficient evidence of episodes of decompensation. *Id.*

On September 12, 2005, Green began treatment at the May Institute. *Id.* at 403. Her initial intake form reports that she saw four different therapists when she was at Arbour Counseling Services. Green alleges that none of the therapists treated her for her trauma background (which she claims included sexual abuse as a teenager). *Id.* at 405, 407. During her intake, she explicitly denied any ideation, intent, or plan of suicidality. *Id.* at 408. She alleged depression, not wanting to leave the house or live, and difficulty controlling her temper. *Id.* at 409. Her treating psychologist at the May Institute was Angela Lopes. *Id.* at 413–17.

On October 3, 2005, Dr. Ethan Kisch, her treating psychiatrist, completed a Supplemental Questionnaire as to Residual Functional Capacity. Pl.'s Br. at 5. Dr. Kisch found that Green had a moderate impairment relating to people, in addition to a moderate impairment understanding, carrying out, and remembering instructions. Admin. Tr. at 372. He found that she had moderately severe limitations in terms of responding to supervision, coworkers, and customary work pressures, and that her restriction of daily activities was moderately severe. *Id.* Dr. Kisch determined that those limitations could be expected to last for twelve months or longer. *Id.* at 373.

During her testimony, Green stated that she could not stand for longer than one hour at a time and could not sit for longer than two hours at a time. *Id.* at 440–41. She stated that her daily activities included washing dishes, making her bed, preparing meals, dusting, doing laundry, watching television, reading, using her computer, and visiting with friends. Def.'s. Br. at 4.

Green's residual capacity to work was assessed by a vocational expert. Admin. Tr. at 451–55. The hearing officer asked the vocational expert to imagine a person with Green's age, education, and past work experience who performed light work in a setting comparable to a public office building in terms of dust, gasses, and other airborne pulmonary irritants. *Id.* at 453–

54. The vocational expert opined that such a person could occupy a variety of jobs including cashier, ticket collector, bench assembler, and racker. *Id.* at 454. He concluded that there were more than 10,000 such jobs in the area of Rhode Island, Massachusetts, and Connecticut. *Id.* at 454.

### C. Federal Jurisdiction

This Court has jurisdiction to hear appeals from final orders or decisions of the Commissioner of Social Security pursuant to 42 U.S.C. section 405(g).

## II. ANALYSIS

### A. Standard of Review

■ Review of the Commissioner's Social Security determination is limited by section 405(g) of the Social Security Act, which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *see also Manso–Pizarro v. Secretary of Health and Human Servs.,* 76 F.3d 15, 16 (1st Cir.1996). The substantial evidence standard is satisfied when "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Ortiz v. Secretary of Health and Human Servs.,* 955 F.2d 765, 769 (1st Cir.1991) (quoting *Rodriguez v. Secretary of Health and Human Servs.,* 647 F.2d 218, 222 (1st Cir.1981)). Furthermore, factual inferences, credibility determinations, and resolutions of conflicts in the evidence are reserved to the Commissioner. *Id.* Accordingly, this Court must affirm the Commissioner's denial, "even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodriguez Pa-*

*gan v. Secretary of Health and Human Servs.,* 819 F.2d 1, 3 (1st Cir.1987).

### B. Social Security Disability Standard

The claimant, Green, bears the initial burden of showing that she is disabled within the meaning of the Social Security Act. *Deblois v. Secretary of Health and Human Servs.,* 686 F.2d 76, 79 (1st Cir. 1982). An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Evidence of impairment is not in itself enough to warrant an award of benefits. *See McDonald v. Secretary of Health and Human Servs.,* 795 F.2d 1118, 1120 (1st Cir.1986). The Social Security Act provides that "[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 423(d)(2)(A).

The Social Security Administration has promulgated a five-step sequential analysis used to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). The hearing officer must determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from performing past relevant work; and (5) whether

the impairment prevents the claimant from doing any other work considering the claimant's age, education, and work experience. *Id.*

## C. The Hearing Officer's Decision

The hearing officer made the following findings: (1) Green meets the non-disability requirements for a period of disability and disability insurance benefits only through June 30, 2003, which is a date that precedes her amended alleged date of onset of disability; (2) Green has not engaged in substantial gainful activity since January 1, 2004; (3) Green has diabetes, depression, asthma, and degenerative joint disease, medically determinable "severe" impairments; (4) these impairments do not meet or medically equal one of the listed impairments in Appendix 1 to Subpart P of Regulations No. 4 entitled "Listing of Impairments"; and (5) Green's statements concerning the intensity, duration, and limiting effects of some of the symptoms she complains of are not entirely credible in light of the medical evidence presented and Green's own descriptions of daily activities. Admin. Tr. at 17–20.

The hearing officer concluded that Green retains the residual functional capacity to perform a wide range of light, unskilled work considering her age, education, work experience, and residual functional capacity. *Id.* at 18, 21. He determined that there are jobs that exist in significant number in the national economy that Green can perform and, therefore, she has not been under a "disability", as defined in the Social Security Act, from January 1, 2004, through the date of his decision. *Id.* at 21–22.

## D. Challenge to the Hearing Officer's Decision

Green raises three challenges to the hearing officer's decision: the hearing officer (1) failed to evaluate properly her mental impairments; (2) gave insufficient weight to the opinions of the treating psychiatrist; and (3) failed to follow the proper standards for pain evaluation and credibility determination. Pl.'s Br. at 7–10.

### 1. Assessment of Mental Impairments

█ Green claims that the hearing officer did not properly assess her mental impairments pursuant to specific guidelines set out in 20 C.F.R. section 404.1520a. Pl.'s Br. at 7. In step two of the assessment process, the hearing officer is required to determine whether the claimant has a medically determinable "severe impairment" or a combination of impairments that are severe. Admin. Tr. at 16. A "severe impairment" can be physical or mental. 20 C.F.R. § 404.1520(a)(4)(ii). There is a specific method in place for evaluating mental impairments. The four criteria that must be used in evaluating mental impairments include: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). The criteria should be marked using the following five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). The hearing officer's decision must include "significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." 20 C.F.R. § 404.1520a(e)(2). Green claims that the hearing officer did not follow these specific guidelines and made no findings regarding her mental functioning. As such, Green requests that the matter be remanded for proper evaluation. Pl.'s Br. at 7–8.

The hearing officer correctly evaluated Green's mental status and followed the

specific guidelines required. In the written decision, the hearing officer properly listed the four criteria necessary to evaluate a mental impairment pursuant to 20 C.F.R. section 404.1520a(c)(3). The hearing officer held that Green suffered from: (1) mild limitations in her ability to independently perform activities of daily living; (2) mild limitations in social functioning; (3) moderate limitations in her ability to maintain concentration, persistence, and attention; and (4) no evidence of any decompensation in work settings. Admin. Tr. at 18. Thus, the hearing officer correctly applied the five-point scale listed in 20 C.F.R. section 404.1520a(c)(4).

The hearing officer also provided "significant history," including detailed medical findings, in his decision pursuant to 20 C.F.R. section 404.1520a(e)(2). For example, in his discussion of the severity of Green's alleged mental impairments, the hearing officer gave a broad overview of the medical evidence. In support of his inferences and decisions, he noted that her therapy reports did not identify any activity restrictions. Admin. Tr. at 19. He further noted that while there were subjective accounts of persistent suicidal ideations, there was a lack of diagnostic findings or psychiatric observations confirming or supporting Green's alleged ideations. *Id.* He also determined that while an initial clinical evaluation listed an inventory of Green's alleged sexual abuse, family troubles, and depression, there was a lack of supporting medical records. *Id.* Furthermore, he concluded that while her treating psychiatrist listed Green as having "moderate to severe" depression, upon evaluation, in light of other medical records, the diagnosis was most likely created for the sole purpose of supporting the disability claim. *Id.* at 20. He noted that he was presented with no other psychiatric exam or evaluation that identified any of the suggested functional deficits. *Id.* Finally, he noted that Green's descriptions of her daily activities actually undermined her alleged disabling limitations. *Id.* Thus, the commissioner clearly listed Green's history and reviewed her alleged limitations as is required pursuant to 20 C.F.R. section 404.1520a(e)(2).

Green specifically argues that the hearing officer failed to make findings with regard to her allegations of an inability to deal with other people, which she claims are supported by the treating psychiatrist's opinion, the opinion of the examining psychologist, Dr. Hirsch, and the opinion of at least one state agency psychologist. Pl.'s Br. at 7. As the resolution of conflicts in evidence is the role of the hearing officer, not the Court, it is only necessary in this instance to determine whether there is substantial evidence to support the hearing officer's conclusions. *Ortiz,* 955 F.2d at 769. While Dr. Hirsch found that she had a personality disorder and "chronic low-grade depression," he also described her frustration tolerance as functional and stated that she is capable of taking public transportation and managing her own finances. Admin. Tr. at 162–63. The psychiatric review of March 31, 2003, concluded that Green had mild to moderate difficulties maintaining her social functioning, which is consistent with the hearing officer's conclusion that her limitations in social functions are "mild". *Id.* at 175. Moreover, analysis of the reports indicates that, as noted by the hearing officer, they fail to offer observations that corroborate Green's subjective complaints. *Id.* at 19. Thus, in this matter there appears to be substantial evidence supporting the hearing officer's conclusion.

**2. Weight given to the opinions of the treating psychiatrist**

▉ Green asserts that the hearing officer erred by giving reduced weight to the

opinion of the treating psychiatrist, Dr. Kisch, because, as treating psychiatrist, his opinion should have been given greater, if not controlling, weight. Pl.'s Br. at 8, 10. Green contends that if the hearing officer doubted Dr. Kisch's opinion, he should have contacted him and asked for clarification instead of giving reduced weight to his opinion. *Id.* Thus, the two issues are: (1) whether the hearing officer acted properly when he determined that the treating psychiatrist's opinion should not have been given controlling weight, and (2) whether the hearing officer was required to contact Kisch when he determined that other evidence in the record contradicted Kisch's findings.

The hearing officer may opt to give the treating source's opinion controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record...." 20 C.F.R. § 404.1527(d)(2). In fact, although more weight traditionally is given to the opinion of the treating source, the hearing officer may choose not to give it controlling weight if the hearing officer finds that it is inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(d)(2); *Berrios–Velez v. Barnhart*, 402 F.Supp.2d 386, 391 (D.P.R.2005); *Shaw v. Secretary of Health and Human Servs.*, No. 93–2173, 1994 WL 251000, at *3 (1st Cir. June 9, 1994). If the hearing officer decides not to give controlling weight to the treating source, however, he must always provide "good reasons" for his decision. *See* 20 C.F.R. § 404.1527(d)(2).

In this instance, the hearing officer did not give Dr. Kisch's opinion controlling weight. Pl.'s Compl. at 8. The hearing officer found Dr. Kisch's assessment inconsistent with the record as a whole. *Id.* at 21. Specifically, the hearing officer found

that the functional capacity questionnaire that was completed by Dr. Kisch appeared to have been created solely for the purpose of supporting the disability claim and that no other evaluation identified the suggested functional deficits. *Id.* at 20. This determination is supported by other medical evidence in the record. *See* Admin. Tr. at 274, 284 (Dr. Stone finds on 3/16/04 that Green exhibits "mild" limitations and no decompensation); Admin. Tr. at 295, 305 (Dr. Keuthen finds on 5/05/04 that Green exhibits "mild" limitations and no decompensation). Angela Lopes, who was Green's most recent psychotherapist and worked with Dr. Kisch, reported on her initial intake form that Green explicitly denied any ideation, intent, or plan of suicidality. *Id.* at 403, 408. Dr. Kisch, however, mentions suicide attempts in his evaluation, and Green mentions such ideations in her deposition. *Id.* at 425, 445. In her intake form, Lopes also concluded that Green's judgment, insight, and thought process were within normal limits. *Id.* at 408. Thus, it is clear that there are discrepancies in the medical record. The evidence contradicting Dr. Kisch's findings, and other evidence in the record, provides a substantial basis for the officer's decision.

Green claims that the hearing officer did not comply with all of the factors listed in 20 C.F.R. section 404.1527(d)(2). Pl.'s Br. at 9. A treating source's opinion generally is given controlling weight and, when it is not, the hearing officer must provide a "good reason" for not doing so. 20 C.F.R. § 404.1527(d)(2). In the instant matter, the hearing officer's decision is not explicit in its compliance with 20 C.F.R. section 404.1527(d)(2). The hearing officer did not state clearly in his decision that the opinion of the treating officer generally should be given deference, that he specifically weighed the testimony of the "treating physician," and that, given the discrepan-

cies in the administrative record, he chose to discount the opinion of the treating physician. Rather, he refers to Kisch's opinion by citing Arbor Counseling Services and refers to Kisch as a "specialist." Admin. Tr. at 20. He then goes on to cite his reason for discounting Kisch's report in some detail. *Id.* 20 C.F.R. § 404.1527(d)(2) The Social Security regulations state that a hearing officer should consider factors such as length of treatment and nature and extent of the treatment relationship when evaluating a treating physician. In the instant matter, the hearing officer did not go into extensive detail about how these factors affected his decision. *Id.* He noted that the report was from a specialist, and also noted that the report was inconsistent with treatment notes, but did not talk about Green's relationship with Kisch. *Id.* Although it would have been desirable for the hearing officer to have referred to Green's psychological "treating physician" in explicit detail, his decision and reasoning are sufficiently clear and, even if he did not address every factor suggested by the statute, substantial evidence supports his decision. It would be a waste of judicial resources to remand this case so that another hearing officer may arrive at the same decision with more clarity.

Green's second argument, that the hearing officer should have recontacted Kisch when he discovered inconsistencies in the record, is covered largely by the argument above. Where there are inconsistencies in the record, the hearing officer will attempt to weigh the evidence and make a disability determination. 20 C.F.R. § 416.927(c)(2). As part of the hearing officer's duty to develop an adequate record, a duty exists to recontact a medical source if the information provided by the treating psychologist *or* other medical source is inadequate to address the question of disability. *See* 20 C.F.R.

§ 404.1512(e). Here, there was sufficient information to make a finding and the hearing officer was permitted to make a credibility determination. Because the hearing officer had the discretion to determine whether or not additional information was necessary, there is no reason for this Court to overturn the hearing officer's decision. *See Rodriguez,* 647 F.2d at 222.

Green states in her complaint that "absent Dr. Kisch's opinion, there is no substantial evidence to support the ALJ's findings that the plaintiff could perform other work." Pl.'s Compl. at 10. There is no support for this argument in the record. The hearing officer, in his decision, followed the five-step analysis set forth in 20 C.F.R. section 404.1520(a)(4)(i)(v). The fifth step in the analysis is the determination of whether the claimant is able to work. In the instant matter, the hearing officer's conclusion was based on his determination that Green did not have a disability. This determination led to the conclusion that Green was able to work. As discussed above, there was sufficient evidence to support this conclusion. There was no need for the hearing officer to seek additional medical consultations to reach that conclusion.

### 3. Assessment of pain & credibility

In the last section of her brief, Green asserts that the hearing officer did not properly analyze her subjective allegations pursuant to the method defined in *Avery v. Secretary of Health and Human Servs.,* 797 F.2d 19, 21–23 (1st Cir.1986), and Social Security Ruling ("SSR") 96–7p. Green makes several claims under this topic, stating that the hearing officer ignored her testimony about the side effects of her medications, failed to ask her at the hearing how much time she spent reading or watching TV, ignored her testimony that she had difficulty with such activities,

made no mention of her social functioning, and ignored her testimony that supported her difficulties relating to others. Pl.'s Br. at 12.

Consideration of pain and other symptoms should be analyzed as a part of the overall five-step process. 20 C.F.R. § 404.1529(d). An individual's statements about his or her symptoms are not enough to establish the existence of a physical or mental impairment or that an individual is disabled. SSR 96–7p. While subjective complaints of pain and other symptoms are considered to be an integral part of the evaluation and, indeed, all stated symptoms must be considered, they are assessed in combination with objective medical evidence including laboratory findings and medical signs. 20 C.F.R. § 404.1529(a). It is the hearing officer's duty to consider all of the information and then make appropriate inferences and conclusions. *Id.* Furthermore, when evaluating the credibility of an individual's statements, the hearing officer must list specific reasons for the weight given to an individual's statements and show that the ultimate decision is supported by evidence in the case record. SSR 96–7p. "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." *Id.* Thus, two basic questions must be considered in light of Green's allegations: (1) whether there is sufficient evidence to show that the hearing officer properly addressed all of her subjective allegations, and (2) if so, whether he followed the proper procedure for assessing pain and credibility.

■ There is sufficient evidence underlying the hearing officer's decision to show that he considered all of Green's subjective allegations. With regard to her claim that he ignored the alleged side effects of her pain medications, he clearly listed and ana-

lyzed a series of ailments for which Green took (or is taking) pain medication. These include: diabetes (noting that there are no objective findings identifying any sensory or strength deficits resulting therefrom); pulmonary difficulties relative to asthma and allergies (noting that Green should be restricted from exposure to high levels of pulmonary irritants though no treating physician lists environmental restrictions); and depression (noting that there is little documentation of severe functional deficits, but that her pursuit of counseling and reliance on medication evidences the presence of likely limitations in her ability to sustain attention and concentration). Admin. Tr. at 20. Green has a valid point in that there is no obvious mention in the hearing officer's decision of her allegation of adverse effects resulting from her numerous medications. It is equally clear, however, that the hearing officer had her complaint in mind as he wrote his decision because he addressed possible side effects that could result from both her pulmonary problems and her depression. Again, it makes no sense to remand this case for the purpose of clarification on this point as it is unlikely that the hearing officer would reach a different conclusion.

Green states that the hearing officer also failed to address her alleged limitations in social functioning, task persistence, and inability to handle stress or any other area of mental functioning. Pl.'s Br. at 12. This is not exactly true. While the hearing officer did not use that precise terminology, he did discuss her alleged strained personal relationships with family members, poor self-image, and sense of hopelessness. Admin. Tr. at 19. A reasonable person could logically conclude that a poor self-image and strained personal relationships fall generally under the category of "social functioning". The hearing officer also noted Green's psychi-

atric progress notes that he concluded seemed to "only chronicle the claimant's daily list of subjective complaints without citing to any specific mental or psychiatric findings that evidence the depressive characterizations or resulting functional deficits." *Id.* Thus, there was no medical evidence that would support Green's claim that she struggled with "task persistence" or an "inability to handle stress."

Finally, the hearing officer noted that Green's descriptions of her daily activities undermined her allegations of disabling limitations. *Id.* at 20. Green, in fact, highlighted her hearing testimony in her memo when she stated that her concentration is impaired when she reads or watches television. Pl.'s Br. at 12; Admin. Tr. at 446–447. While this is, in fact, what she stated, the hearing officer pointed out that this contradicted her earlier testimony wherein she stated that she watches movies and reality programs on television, in addition to reading novels and "true stories." Admin. Tr. at 439. The hearing officer concluded that her regular reading and viewing of television discredited her allegations that she cannot concentrate or pay attention for more than a short period of time. *Id.* Green perhaps has a point that she may indeed read and watch television for several hours without being able to concentrate on what is being shown. The two, however, are not necessarily mutually exclusive. She alleges that the hearing officer should have asked her how much time she spent on such activities. Pl.'s Br. at 12. The hearing officer, however, already had that information from her original application, wherein she stated that she watches television for two to three hours a day and reads four hours a day (also stating that she has trouble "retaining" what she reads). Admin. Tr. at 76. In the end, however, it is within the hearing officer's discretion to determine credibility and, in this instance, even if the

plaintiff does have an argument in terms of her ability to concentrate, it is not strong enough to overturn the Commissioner's decision. There is still substantive evidence supporting the hearing officer's decision. Thus, while it is true that the hearing officer did not use the exact terminology that Green uses in her memorandum, he brought to the fore several related issues that a reasonable person could accept as addressing her allegations.

Green's final allegation is that the hearing officer made conclusory statements regarding the credibility of her allegations without supporting them and used incorrect evidentiary proof to address them. Pl.'s Br. at 12. It is true that the hearing officer did not find her testimony or her treating psychologist's diagnosis very credible. Indeed, he stated that her "subjective allegations are not fully credible." *Id.* at 20.

While some of the hearing officer's decisions are indeed conclusory, they generally appear to be supported by evidentiary proof. "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." SSR 96–7p. As evidenced in other areas of his decision, the hearing officer demonstrated that there was a lack of consistency both in the medical testimony and in Green's statements. It seems that he weighed the various medical testimonies against each other and allocated weight in accordance with the credibility of the evidence and its consistency. Admin. Tr. at 20. Furthermore, he weighed Green's allegations based on her conflicting testimony and stated actions, and considered her subjective complaints to medical professionals that were not supported by any evidentiary findings. For example, he noted her claim of suicidal ideations, which was supported by her treating physician in the

evaluation that the hearing officer discredited, but was not credited by other psychiatric examiners. *See id.* at 19, 274–84, 295–305. Thus, while the hearing officer did make conclusory statements regarding the credibility of Green's symptoms and claims, he also supported his claims with evidence that he included in his decision.

## III. CONCLUSION

This hearing officer decision is not a model of clarity. In *Shaw,* the First Circuit held that "[w]hile we would prefer more explanatory detail, and the new regulation contemplates greater detail, we see no reason to return this case for the purely formulaic purpose of having the ALJ write out what seems plain on a review of the record." *Shaw,* No. 93–2173, 1994 WL 251000, at *5. Given the lack of explanatory detail, this hearing officer decision presents problems similar to *Shaw.* Despite a lack of explanation, however, there is substantial evidence to support the hearing officer's findings in his decision.

Thus, for all of the reasons set forth above, Green's Motion to Reverse or Remand [Doc. No. 15] is DENIED, and the Commissioner's Motion for Order Affirming the Decision of the Commissioner [Doc. No. 17] is ALLOWED.

SO ORDERED.